**TEXAS CITYVIEW CARE CENTER, L.P. d/b/a Cityview Care Center, Dallas Hickman, R.N., and Lawrence Wayne Powell, Jr., Appellants,**

v.

**Linda FRYER, Nelda Patton, and Mitzi Griffin, Individually and as Independent Executrix of the Estate of Frances Emmons, Appellees.**

**In re Texas Cityview Care Center, L.P. d/b/a Cityview Care Center, Lawrence Wayne Powell, Jr., and Dallas Hickman, R.N., Relators.**

Nos. 2–06–373–CV, 2–06–426–CV.

Court of Appeals of Texas, Fort Worth.

May 24, 2007.

Hermes, Sargent, Bates, LLP, Hilaree A. Casada, Frank Alvarez, Dallas, for appellants/relators.

Griffith, Jay, Michel & Moore, LLP, Thomas M. Michel, Boehme & Moore, LLP, Brandon Boehme, Fort Worth, for appellees/real parties in interest.

PANEL B: LIVINGSTON, GARDNER, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### Introduction

Appellants and relators (referred to herein as appellants) Texas Cityview Care Center, L.P. d/b/a Cityview Care Center, Dallas Hickman, R.N., and Lawrence Wayne Powell, Jr. filed this consolidated interlocutory appeal and petition for writ of mandamus [1] challenging the trial court's orders refusing to (1) compel arbitration and (2) abate the underlying suit pending the outcome of arbitration proceedings. We affirm the trial court's orders and deny mandamus relief.

### Background Facts

Appellees Mitzi Griffin—individually and as independent executrix of the estate of Frances Emmons—Linda Fryer, and Nelda Patton filed the underlying medical malpractice suit over the care given to Emmons, their mother, while she was a resident at Cityview Care Center. Appellants moved to compel arbitration of the suit based on an arbitration agreement signed by Griffin when Emmons was first admitted to the facility.

The record shows that on March 19, 2004, the day Emmons was admitted to the facility, she personally signed a "Medical Power of Attorney" naming Griffin her agent for the purpose of making health care decisions. On that same day, Griffin signed, among other documents, an arbitration agreement and a separate facility admission agreement [2] purporting to bind her mother to those agreements. Emmons is identified in both of those documents as the "Resident," but Griffin is the

---

1. Appellants initially filed the interlocutory appeal. Upon filing their petition for writ of mandamus, they requested that the appeal and mandamus be consolidated.

2. The facility admission agreement did not contain any arbitration language; the only agreement containing such language is the separate arbitration agreement, entitled "Resident and Facility Arbitration Agreement."

only one who signed them; the only document Emmons signed on March 19 was the medical power of attorney.

Griffin signed and dated the arbitration agreement immediately above the caption, "Resident/Representative Signature Date."[3] She signed the facility admission agreement above the caption, "Responsible Party Signature," even though the signature block listed Emmons as the "Responsible Party."[4]

At the hearing on appellants' motion to compel arbitration and motion to abate the trial proceedings pending arbitration, the trial court stated that it would deny the motion to compel because appellants had presented no evidence of a valid arbitration agreement. The court indicated that the agreement was not valid because "the person who signed it [the Resident and Facility Arbitration Agreement] didn't have the legal authority, and there's no evidence before me that [she] had legal authority, to sign on behalf of Ms. Emmons." The court subsequently signed orders denying appellants' motion to compel and motion to abate the trial pending arbitration.

**3.** Emmons is listed in the body of the arbitration agreement as the "Resident, ... or 'Resident's Authorized Representative.'"

**4.** Underneath Griffin's signature, the responsible party is listed as Frances Emmons, and the relationship as "Self." Emmons's address is also listed. In addition, Emmons is shown on the first page of the admission agreement as the "Resident's Responsible Party." It appears that the information regarding Emmons was either typed onto the form or entered into the form on computer and then printed for signature. In contrast, Cityview's admit/discharge record for Emmons lists Griffin as the "Responsible Party" and Emmons's other daughters as emergency contacts.

**5.** Section 74.451(a) provides as follows:
No physician, professional association of physicians, or other health care provider

## Issue Presented

In one issue, appellants contend that the trial court erred by refusing to compel arbitration and abate the underlying suit pending arbitration. According to appellants, Griffin had either actual or apparent authority to bind Emmons and "all persons who[se] claim is derived through or on behalf of [Emmons], including that of any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of [Emmons]," to the arbitration agreement. Appellees contend that the agreement is not valid because there is no evidence that Griffin had authority to enter into the agreement. They also contend that the arbitration agreement is invalid under section 74.451 of the civil practice and remedies code.[5]

## Interlocutory Appeal

 To determine whether we have jurisdiction over the interlocutory appeal in addition to the mandamus petition, we must decide whether the trial court denied appellants' motion to compel pursuant to the Federal Arbitration Act (FAA), the Texas General Arbitration Act (TGAA), or

shall request or require a patient or prospective patient to execute an agreement to arbitrate a health care liability claim unless the form of agreement delivered to the patient contains a written notice in 10–point boldface type clearly and conspicuously stating:
UNDER TEXAS LAW, THIS AGREEMENT IS INVALID AND OF NO LEGAL EFFECT UNLESS IT IS ALSO SIGNED BY AN ATTORNEY OF YOUR OWN CHOOSING. THIS AGREEMENT CONTAINS A WAIVER OF IMPORTANT LEGAL RIGHTS, INCLUDING YOUR RIGHT TO A JURY. YOU SHOULD NOT SIGN THIS AGREEMENT WITHOUT FIRST CONSULTING WITH AN ATTORNEY.
Tex. Civ. Prac. & Rem.Code Ann. § 74.451(a) (Vernon 2005).

both. *See* 9 U.S.C.A. §§ 1–16 (West 1999 & Supp.2006); Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon 2005); *In re Citigroup Global Mkts., Inc.*, 202 S.W.3d 477, 480 (Tex.App.-Dallas 2006, orig. proceeding). In Texas, a trial court's denial of arbitration under the FAA may be challenged only by mandamus and not by interlocutory appeal. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex.2006) (orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding). But a party may seek to enforce an arbitration agreement under both the FAA and TGAA if, like the agreement here, it does not say whether the FAA or TGAA applies. *D. Wilson Constr. Co.*, 196 S.W.3d at 778–79. Texas appellate courts have jurisdiction over interlocutory appeals from the denial of arbitration under the TGAA only or under both the FAA and TGAA. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1); *D. Wilson Constr. Co.*, 196 S.W.3d at 778–79.

Here, the agreement did not purport to be governed by either the FAA or the TGAA. In their motion to compel, appellants sought arbitration under the FAA only; however, appellees contended in their response that the FAA is inapplicable, and that enforceability of the agreement is governed by the TGAA. The trial court's order denying arbitration does not specify whether the denial was under the FAA or TGAA. Appellants sought both a mandamus and an interlocutory appeal; in their appeal, they contend that the agreement is enforceable under the TGAA as well as the FAA. Accordingly, we have jurisdiction over both the appeal and the mandamus unless the FAA pre-empts the TGAA in this instance. *See id.* at 779–80.

■ To determine whether an agreement that does not purport to be under either the FAA or TGAA is governed only by the FAA (i.e., whether the FAA pre-

empts the TGAA), thus precluding an appellate court's jurisdiction over an interlocutory appeal, we must determine whether (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, *and* (4) state law affects the enforceability of the agreement. 9 U.S.C.A. § 2; *D. Wilson Constr. Co.*, 196 S.W.3d at 780; *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex.2005) (orig. proceeding). For the FAA to preempt the TGAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TGAA has expressly exempted the agreement from coverage, or (2) the TGAA has imposed an enforceability requirement not found in the FAA. *D. Wilson Constr. Co.*, 196 S.W.3d at 780. In other words, the FAA pre-empts only contrary state law, not consonant state law. *Id.* at 779.

Here, appellees challenged the validity of the arbitration agreement under a traditional contract defense—lack of authority—and on state law grounds—failure to comply with section 74.451 of the civil practice and remedies code. Because an analysis of these defenses is necessary to review the third and fourth pre-emption factors—whether the agreement can withstand traditional contract defenses and whether state law affects enforceability of the agreement—we must review the merits of these defenses first to determine whether the FAA pre-empts the TGAA, and, thus, whether we have jurisdiction over the interlocutory appeal. *See In re Rapid Settlements, Ltd.*, 202 S.W.3d 456, 460–63 (Tex.App.-Beaumont 2006, orig. proceeding).

### Analysis

■ A party seeking to compel arbitration under either the FAA or TGAA must establish the existence of a valid,

enforceable arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding), *abrogated in part on other grounds by In re Halliburton Co.,* 80 S.W.3d 566, 571–72 (Tex.2002) (orig. proceeding), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *In re Neutral Posture, Inc.,* 135 S.W.3d 725, 729 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding); *Jabri v. Qaddura,* 108 S.W.3d 404, 410 (Tex.App.-Fort Worth 2003, no pet.). Ordinarily, the trial court rather than the arbitrator decides gateway matters, such as whether a valid arbitration agreement exists. *See In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex.2005) (orig. proceeding). A trial court's determination of an arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003).

■ In determining whether an arbitration agreement is valid under the FAA and TGAA, courts generally apply ordinary state law principles of contract formation. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *D. Wilson Constr. Co.,* 196 S.W.3d at 781; *In re Premont ISD,* No. 04–06–00810–CV, 2007 WL 390784, at *3 (Tex.App.-San Antonio Feb. 7, 2007, orig. proceeding); *Rapid Settlements, Ltd.,* 202 S.W.3d at 460; *see Ikon Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 693 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Thus, we will first review appellants' contention that Griffin had authority to bind Emmons and all parties claiming under Emmons to the arbitration agreement because if the evidence shows that she lacked the authority to do so, the agreement is unenforceable under either the FAA or the TGAA. *See, e.g., Gibson v.*

*Bostick Roofing & Sheet Metal Co.,* 148 S.W.3d 482, 487–88, 491–92 (Tex.App.-El Paso 2004, no pet.) (holding that agreement was unenforceable against third party when evidence failed to show that party actually signing agreement had actual or apparent authority); *Bennett v. Miller,* 137 S.W.3d 894, 895–98 (Tex.App.-Texarkana 2004, no pet.) (holding that contingency fee agreement was not valid and enforceable because temporary guardian did not have authority to bind ward to agreement).

## Validity of Lack of Authority Defense

### *Medical Power of Attorney*

■ Appellants first contend that Griffin had actual authority to sign the arbitration agreement on Emmons's behalf by virtue of the medical power of attorney that Emmons signed on the day of her admission to Cityview.

■ In Texas, medical powers of attorney are governed by the health and safety code. TEX. HEALTH & SAFETY CODE ANN. §§ 166.151–.166 (Vernon 2001). An agent for purposes of a medical power of attorney is "an adult to whom authority to make health care decisions is delegated under a medical power of attorney." *Id.* § 166.151(2). A "[h]ealth care or treatment decision" means "consent, refusal to consent, or withdrawal of consent to health care, treatment, service, or a procedure to maintain, diagnose, or treat an individual's physical or mental condition." *Id.* § 166.002(7) (Vernon Supp.2006).

The medical power of attorney that Emmons signed reads, in pertinent part: "I, Frances Emmons, ... appoint ... Griffin ... as my agent to make any and all health care decisions for me.... *This medical power of attorney takes effect if I become unable to make my own health care decisions and this fact is certified in*

*writing by my physician."* [Emphasis added.] There is also a statement on the first page of the document that the agent's authority "begins when your doctor certifies that you lack the competence to make health care decisions."

■■■ The law does not presume agency. *Lifshutz v. Lifshutz,* 199 S.W.3d 9, 22 (Tex.App.-San Antonio 2006, pets. denied); *Suarez v. Jordan,* 35 S.W.3d 268, 272 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Disney Enters., Inc. v. Esprit Fin., Inc.,* 981 S.W.2d 25, 30 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.). The party alleging agency has the burden to prove its existence. *Lifshutz,* 199 S.W.3d at 22; *Disney Enters.,* 981 S.W.2d at 30. Absent actual or apparent authority, an agent cannot bind a principal. *Lifshutz,* 199 S.W.3d at 22.

■■■ Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Lifshutz,* 199 S.W.3d at 22. Actual authority is created through conduct of the principal communicated to the agent. *Lifshutz,* 199 S.W.3d at 22; *Huynh v. Nguyen,* 180 S.W.3d 608, 622–23 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

Appellants' argument fails for several reasons. First, there is no evidence that the medical power of attorney ever became effective. By statute and by its own terms, the medical power of attorney did not confer authority on Griffin until a doctor certified that Emmons was unable to make health care decisions for herself. *See* TEX. HEALTH & SAFETY CODE ANN. § 166.152(b); *cf. Comerica Bank–Tex. v. Tex. Commerce Bank Nat'l Ass'n,* 2 S.W.3d 723, 725–27 (Tex.App.-Texarkana 1999, pet. denied) (holding that similar language in durable power of attorney was valid and, thus, agent's authority under power of attorney did not begin until after disability of principal). There is no evidence of any such certification, or any other evidence of incompetency, in the record.[6]

In addition, nothing in the medical power of attorney indicates that it was intended to confer authority on Griffin to make legal, as opposed to health care, decisions for Emmons, such as whether to waive Emmons's right to a jury trial by agreeing to arbitration of any disputes. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 166.002(7) (defining health care decision), 166.152(a) (providing that agent named in medical power of attorney may make "any *health care decision* on the principal's behalf that the principal could make if the principal were competent") (emphasis added). Thus, even if the medical power of attorney had become effective, the scope of Griffin's authority would not have extended to signing the arbitration agreement. *See id.* §§ 166.002(7), 166.152(a); *cf. Serv. Fin. v. Adriatic Ins. Co.,* 46 S.W.3d 436, 455 (Tex.App.-Waco 2001), *judgm't vacated by agr. of parties,* 51 S.W.3d 450 (Tex.

---

**6.** The medical power of attorney fails to meet two other requirements of the statute: (1) there is no evidence that Emmons was provided with the disclosure statement required by section 166.162, which provides that a medical power of attorney is not effective unless such a disclosure statement is provided; and (2) in violation of sections 166.003(2)(f) and 166.154(a) of the health and safety code, it appears that the two witnesses to the medical power of attorney were employees of Cityview, or at least related in some way to Cityview, because they listed their address as Cityview's address. TEX. HEALTH & SAFETY CODE ANN. §§ 166.003(2)(f), 166.154(a), 166.162.

App.-Waco 2001, no pet.) ("A power of attorney authorizes the agent to perform specified acts on behalf of the principal.").

Accordingly, for the reasons set forth above, we hold that appellants failed to meet their burden of showing that Griffin had actual authority to sign the arbitration agreement on Emmons's behalf pursuant to the medical power of attorney.

*Emmons's Allowing Griffin to Sign Other Documents*

Appellants alternatively argue that if Griffin did not have actual authority to sign the arbitration agreement as Emmons's agent under the medical power of attorney, the evidence shows that Emmons conferred apparent authority on Griffin to sign the arbitration agreement by either allowing Griffin to sign, or doing nothing to prevent Griffin from signing, the arbitration agreement and other documents as Emmons's representative.[7] Appellants contend that "had ... Emmons not wanted Griffin to act on her behalf during the admission process, she could have easily signed the admissions forms on her own behalf or alerted someone at Cityview that she did not want Griffin to sign on her behalf." According to appellants, the fact that Emmons signed the medical power of attorney, but not the other documents, shows that Emmons intended for Griffin to sign—or acquiesced in Griffin's signing—the other documents as her agent.

■■■■ Apparent authority arises through acts of participation, knowledge, or acquiescence *by the principal* that clothe the agent with the indicia of apparent authority. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex.1998). Certain limitations apply in determining whether apparent authority exists. *Lif-*

*shutz*, 199 S.W.3d at 22; *Suarez*, 35 S.W.3d at 272. First, apparent authority is determined by looking to the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Lifshutz*, 199 S.W.3d at 22; *Suarez*, 35 S.W.3d at 272. Only the conduct of the principal may be considered; representations made by the agent of her authority have no effect. *Lifshutz*, 199 S.W.3d at 22–23; *Suarez*, 35 S.W.3d at 272. Second, the principal must either have affirmatively held the agent out as possessing the authority, or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Lifshutz*, 199 S.W.3d at 23; *Suarez*, 35 S.W.3d at 272. Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent without having made such a determination, she does so at her own risk. *Lifshutz*, 199 S.W.3d at 23; *Suarez*, 35 S.W.3d at 272.

■■■■ Here, the only possible evidence of Emmons's "participation, knowledge, or acquiescence" that would clothe Griffin with any indicia of authority is Emmons's signing the medical power of attorney document. But we have already determined that there is no evidence that Griffin's authority under that document had become effective, and the authority granted under that document does not extend to signing the arbitration agreement. There is no evidence concerning Emmons's intent in signing the medical power of attorney as opposed to the other documents. Moreover, there is no evidence that Emmons

---

**7.** As we discuss below, there is no evidence in the record as to whether Emmons was present when Griffin signed these documents, nor is there any evidence that Emmons was aware Griffin signed these documents.

was even aware that Griffin had signed any other documents on her behalf.

Appellants focus on Griffin's activities in signing the documents, but in an apparent authority analysis, what matters is the principal's actions. *See Morris,* 981 S.W.2d at 672; *Lifshutz,* 199 S.W.3d at 22. The only evidence of Emmons's actions is her signing the medical power of attorney the same day. We cannot infer from this that she intended Griffin to have any authority other than as expressly set out in that document. Nor may we infer from the *absence* of evidence regarding Emmons's intent or knowledge as to the other documents Griffin signed that Emmons performed acts of participation, knowledge, or acquiescence that would lead a reasonably prudent person using diligence and discretion to suppose that Griffin had the authority to act on Emmons's behalf. Accordingly, we conclude and hold that appellants failed to meet their burden to prove the existence of an agency relationship giving Griffin authority to act on Emmons's behalf with respect to the arbitration agreement; therefore, appellants likewise failed to prove the existence of a valid arbitration agreement under state law principles of contract formation.

■ Because appellants failed to prove the existence of a valid arbitration agreement under state contract law, the third factor that must be present for the FAA to pre-empt the TGAA—ability to withstand scrutiny under traditional contract defenses—is not present here. The purpose of 9 U.S.C.A. section 2 was to "foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984). An agreement such as the one here, which does not specify whether the parties intended to arbitrate under either the FAA or the TGAA, and which would be unenforceable under either the FAA or the TGAA because the signatory lacked the authority to bind the principal to the agreement (and which would be unenforceable against the signatory in her individual capacity because there is no evidence that she signed any of the documents in her individual capacity), does not violate this purpose. Thus, we conclude and hold that our jurisdiction of appellants' complaints extend to both the mandamus proceeding and the interlocutory appeal. *See D. Wilson Constr. Co.,* 196 S.W.3d at 780.

Having determined that appellants failed to prove the existence of a valid agreement to arbitrate because they failed to prove that Griffin had authority to bind Emmons or anyone claiming by and through Emmons to the Resident and Facility Arbitration Agreement, we hold that the trial court did not err by denying appellants' (1) motion to compel arbitration and (2) motion to abate the trial court proceedings pending arbitration. Accordingly, we overrule appellants' sole issue on appeal. We also hold that appellants are not entitled to mandamus relief.

## Conclusion

We affirm the trial court's interlocutory orders denying appellants' (1) motion to compel arbitration and (2) motion to abate the trial court proceedings pending arbitration. We also deny appellants' petition for writ of mandamus.