**Marshall HOWARD d/b/a Four Seasons Automotive, Appellant,**

v.

**The BURLINGTON INSURANCE COMPANY and McClelland & Hine, Inc., Appellees.**

No. 05–09–01324–CV.

Court of Appeals of Texas, Dallas.

June 10, 2011.

---

Jack B. Peacock, Jr., D.G. Gagnon, Cynthia Kay Shanklin, Gagnon, Peacock, & Shanklin, P.C., Dallas, for Appellant.

Leslie Dean Pickett, Galloway, Johnson, Tompkins, Burr & Smith, James Bailey, Houston, Wm. Lance Lewis, Marcie L. Schout, Tammy Lynn Clary, Quilling, Selander, Lownds, Winslett & Moser, P.C., Dallas, for Appellees.

Before Justices MARTIN RICHTER, LANG, and MYERS.

## OPINION

Opinion by Justice MARTIN RICHTER.

Appellant, Marshall Howard d/b/a Four Seasons Automotive, appeals from trial court judgments in favor of appellees, The Burlington Insurance Company (TBIC) and McClelland & Hine, Inc. (MHI). In two issues, Howard contends the trial court erred in granting the no-evidence and traditional motions for summary judgment filed by TBIC and MHI. We affirm the judgments of the trial court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Howard obtained insurance coverage for his auto repair business from John Crist

(Crist), an independent insurance broker doing business as A–Lo Insurance Agency. Crist obtained quotes for garage liability insurance from two different insurance companies and forwarded them to Howard. Upon Howard's selection of the quote provided by MHI, Crist completed an insurance application for Howard and submitted it to MHI. In item 15 of the coverage section of the application form, Crist specifically declined building and personal property coverage. The application form contained Howard's signature, as witnessed by Crist; however, Howard contends he neither saw nor signed the application form. Upon receipt of Howard's signed and completed application from Crist, MHI provided Crist with an insurance binder confirmation of the coverage selected and premium quoted, and transmitted the application to TBIC. TBIC then issued Garage Policy No. 211B000392 (the TBIC policy), effective from December 13, 2004 to December 13, 2005, which provided the coverage requested in the application. Upon receipt of the TBIC policy, Howard looked at it but did not read the entire policy. Howard did not attempt to verify whether the TBIC policy provided the coverage he asked Crist to obtain.

On September 3, 2005, a fire occurred at Howard's business. The fire damaged the building, equipment and personal effects as well as several vehicles owned by Howard's clients. Howard submitted a claim to TBIC for which partial payment was made. TBIC paid third-party liability claims covered under the policy. TBIC denied coverage for Howard's equipment and personal property.

Howard sued TBIC and MHI for false advertising, misrepresentation, negligent misrepresentation, breach of fiduciary duty, fraud and fraudulent inducement, and negligence. Howard asserted additional claims against TBIC for breach of good faith and fair dealing, breach of contract, violation of the unfair claims settlement practices act, violation of the prompt payment of claims act, promissory and equitable estoppel, and for selling insurance without a license. TBIC filed a counterclaim asserting Howard breached the insurance contract by failing to reimburse TBIC for policy deductibles on the third-party claims paid by TBIC. TBIC also filed an unopposed motion to designate Crist and A–Lo Insurance Agency as responsible third parties, which was granted by the trial court. MHI filed a motion for sanctions contending Howard's claims were groundless.

TBIC and MHI both filed traditional and no-evidence motions for summary judgment, arguing there was no evidence that: (i) the garage liability policy, a third-party liability policy, provided coverage for first-party property damage, and (ii) an agency relationship existed between Crist and TBIC and/or MHI such that alleged misrepresentations by Crist could be imputed to TBIC or MHI. Howard responded, arguing the quote, binder, and policy indicated he had coverage for his equipment and property. He also asserted that TBIC and MHI were liable for the mistakes and misrepresentations of Crist.

Howard amended his original petition four times—amending claims, adding claims, and adding Crist as a defendant. Howard also filed a counterclaim against TBIC contending it violated the Deceptive Trade Practices Act (DTPA) and committed fraud by placing a $500 deductible in the policy after allegedly representing during the procurement process that the policy would have a $250 deductible. After Howard filed his second amended petition, TBIC and MHI filed their first amended motions for summary judgment to address Howard's additional claims. TBIC and MHI then filed supplemental motions for summary judgment to address the new

claims alleged in Howard's third amended petition. Howard's fourth amended petition added Crist as a defendant and restated Howard's previous claims as to TBIC and MHI. TBIC and MHI did not further amend or supplement their motions for summary judgment in response to Howard's fourth amended petition.

On March 18, 2008, the trial court granted TBIC's first amended and supplemental motions for summary judgment. On March 20, 2008, the trial court granted MHI's first amended and supplemental motions for summary judgment. TBIC and MHI filed an unopposed motion to sever Howard's claims against Crist into a separate cause of action and the trial court signed an order granting their motion. Because Howard's claims against Crist were severed by the trial court into a separate lawsuit, the record contains no indication whether the trial court found that Crist misrepresented the quotation, binder or insurance policy. The issue of Crist's liability is not before us and we express no opinion on the question. TEX. R.APP. P. 47.1.

Howard filed a motion for new trial, which was denied by the trial court. Howard then filed his first appeal, asserting the trial court erred in granting summary judgments in favor of TBIC and MHI. On September 28, 2009, this Court issued its mandate, dismissing Howard's first appeal for want of jurisdiction because there was no final judgment in the trial court that resolved all claims between the parties. The judgments granting TBIC's and MHI's motions for summary judgment were not final, appealable orders because TBIC's counterclaim and MHI's motion for sanctions against Howard remained pending. The parties returned to the trial court and sought dismissal of the pending claims. On September 29, 2009, MHI withdrew its motion for sanctions against Howard and the trial court signed an or-

der denying MHI's motion as moot. Also on September 29, 2009, the trial court entered an agreed order dismissing TBIC's counterclaim against Howard, and Howard's counterclaim against TBIC and crossclaim against MHI. On October 28, 2009, Howard filed the appeal currently before this Court.

## II. STANDARD OF REVIEW

■ When a motion for summary judgment presents both no-evidence and traditional grounds, we first review the propriety of the summary judgment under the rule 166a(i) no-evidence standards. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). If an appellant failed to produce more than a scintilla of evidence under the no-evidence standards, there is no need to analyze whether an appellee's summary judgment proof satisfied the burden related to traditional summary judgment motions. *Id.*

■ A no-evidence motion for summary judgment must specifically state the elements for which there is no evidence. TEX.R. CIV. P. 166a(i); *see Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact on the challenged elements. TEX.R. CIV. P. 166a(i); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). When reviewing a no-evidence motion for summary judgment, we examine the record in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006). A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 576 (Tex.App.-Dallas 2007, no pet.). Less than a scintilla of evidence

exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Ford Motor Co.*, 135 S.W.3d at 601.

We review a traditional motion for summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). A defendant moving for traditional summary judgment must either (1) disprove at least one essential element of the plaintiff's cause of action as a matter of law or (2) plead and conclusively establish each essential element of an affirmative defense. *See Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex.App.-Dallas 2006, no pet.). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *See Provident Life*, 128 S.W.3d at 216; *Kastner*, 231 S.W.3d at 577.

## III. DISCUSSION

### A. The Quote, Application, Binder, and Policy

On appeal, Howard argues the evidence established the TBIC insurance policy provided coverage for his equipment and personal property. Alternatively, Howard contends the evidence raised a fact issue as to whether TBIC's insurance policy is ambiguous. Howard also argues the evidence raised a fact issue as to whether MHI issued a misleading quote and binder in violation of the insurance code.

The MHI quotation confirmation (quote) summarized the coverage that would be provided to Howard under a TBIC garage liability policy. In reviewing the quote, we note the document clearly states "[t]his is a quotation only and may not contain the same terms and conditions as requested on the application. PLEASE REVIEW CAREFULLY." The quote identifies the contemplated coverage to be "Garage Liability—Non-dealers." Immediately under the described coverage is a list of coverage limits which includes garage liability—each accident limit, garage liability—aggregate limit, garagekeepers legal liability, premises medical payments, and broadened coverages (fire legal). There is no language in the quote to suggest that broadened coverage (fire legal) includes first-party coverage for the insured's own property. Thereafter, the quote summarizes deductibles, exclusions, premiums, and fees proposed with respect to such a garage liability policy.

■ A quote is not an insurance contract; it is an offer to make a contract of insurance. *See Inglish v. Prudential Ins. Co. of Am.*, 928 S.W.2d 702, 706 (Tex. App.-Houston [1st Dist.] 1996, writ denied). Clearly, an insurance quote summarizes the proposed coverage and does not contain all the terms, provisions and exclusions that are set forth in the actual insurance policy. Howard may have made assumptions about coverage for his equipment and personal property based upon his reading of the quote and his discussions with Crist. However, based on the

plain language of the quote, we conclude the quote would not have caused a reasonable person to believe he was being offered first-party coverage for his equipment and personal property.

The "Garage Application" submitted on behalf of Howard specifically declined coverage for personal property. Item 15 of the coverage section of the application form states as follows: "15. Building and Personal Property (only available in some states) If coverage is selected, please complete and attach Accord Property Application." Immediately following is the handwritten word "no," and no Accord Property Application was attached to the application. According to Howard's summary judgment evidence, Crist filled out the application for Howard, based on information he received from Howard during a telephone conversation. Howard contends he never saw the application and did not sign it. Nevertheless, it is undisputed that the application for garage liability insurance did not request first-party coverage and in fact, specifically declined it.

■ After receiving the completed and signed application from Crist, MHI issued a binder confirmation (binder). Howard claims he also relied upon the binder from MHI that he would have fire coverage for his equipment and personal property. The coverage summarized in the binder is identical to the coverage in the quote and both reflect the coverages to be included in the TBIC policy. Like the quote, the binder is silent with respect to first-party coverage for equipment or personal property. The binder states it is effective until the policy is issued or the binder is cancelled. An insurance binder is a contract that provides insurance coverage pending the issuance of an original insurance policy. *See* TEX. INS.CODE ANN. § 549.001(2) (West 2009); *Gamma Group, Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203,

206 (Tex.App.-Dallas 2007, pet. denied). Generally, a binder provides only as much coverage as will be provided in the contemplated policy itself. *See Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 341 F.3d 415, 420–21 (5th Cir.2003); *Ranger Cnty. Mut. Ins. Co. v. Chrysler Credit Corp.*, 501 S.W.2d 295, 298 (Tex.1973) (as long as a binder is in effect, an insured may look to the form of the contemplated policy for coverage, duration, cancellation, and other terms). Based on the plain language of the binder, we conclude the binder would not have caused a reasonable person to believe the insurance coverage he was purchasing was first-party coverage for his equipment and personal property.

TBIC issued a policy of insurance to Howard that provided the coverage requested in the application and summarized in the quote and binder. Howard contends the TBIC garage liability policy provides coverage for his equipment and personal property damaged in the fire. Alternatively, Howard contends the policy is ambiguous.

■ In Texas, interpretation of insurance contracts is governed by the same rules that apply to contracts in general. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003); *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999). The primary concern of a court in construing a written contract is to ascertain the intent of the parties as expressed in the written agreement. *See Provident Life*, 128 S.W.3d at 216; *Gamma Group*, 242 S.W.3d at 210. If a contract or policy is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law. *See Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157; *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998).

■ If, however, the language of the policy is subject to two or more reasonable interpretations, it is ambiguous. *See Kelley–Coppedge*, 980 S.W.2d at 464. Whether a contract is ambiguous is a question of law for the court to determine. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). An ambiguity does not arise simply because the parties offer conflicting interpretations. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006); *Kelley–Coppedge*, 980 S.W.2d at 464. Ambiguity must be evident from the policy itself; it cannot be created by introducing parol evidence of intent. *See Fiess*, 202 S.W.3d at 747. In interpreting an insurance policy, as with any other contract, we must read all parts of the policy together and exercise caution not to isolate particular sections or provisions from the policy as a whole. *Provident Life*, 128 S.W.3d at 216. We find no ambiguity in this policy.

■ The TBIC policy issued to Howard provides two basic forms of liability coverage: (1) garage operations, providing garage liability coverage; and (2) garage keepers, providing liability coverage for certain defined automobiles arising out of garage operations. An examination of the TBIC garage policy as a whole reveals that it is a liability policy providing coverage for amounts Howard is legally obligated to pay. The "Garage Non–Dealer Coverage Form Declarations" provides a list of coverages purchased, including liability, premises medical payments, broadened coverage consisting of personal injury and advertising injury liability and fire legal liability, and garage keepers liability for autos defined on supplementary schedules. With respect to garage operations, the policy states "we will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations.'" With respect to garage keepers coverage, the policy states "[w]e will pay all sums the 'insured' legally must pay as damages for 'loss' to a covered 'auto' or 'auto' equipment left in the 'insured's' care while the 'insured' is attending, servicing, repairing, parking or storing it in your 'garage operation.'" Thus, according to the plain language of its policy, TBIC agreed to insure Howard for amounts Howard was legally obligated to pay others who were injured or damaged by Howard's garage operations. This language indicates the TBIC policy is a third-party liability policy. *See Great Am. Ins. Co. v. Jim Stephenson Motor Co.*, No. 05–94–00858–CV, 1996 WL 135688, at *5 (Tex.App.-Dallas Mar. 26, 1996, writ denied) (third party coverage protects the insured against liability arising out of bodily injury to others or damages to the property of others). The TBIC policy does not provide coverage for first-party claims for damages to Howard's equipment or personal property. *Id.* (first party coverage provides coverage for the insured's own property and person).

■ The TBIC policy also includes a "broadened coverage" endorsement that modifies the garage operations coverage to add fire legal liability coverage for liability claims arising from fire damage to the premises. The policy states "[t]he insurance applies to 'property damage' caused by fire to premises while rented to you or temporarily occupied by you with the permission of the owner." Howard argues that this broadened coverage endorsement creates coverage for *any* property damage caused by a fire at the premises. However, to reach such a conclusion, we would have to read the broadened coverage endorsement in isolation. Although the fire legal liability coverage endorsement broadens the ordinary meaning of garage operations, we must still consider the endorsement as part of the entire policy. We

consider an insurance policy as a whole. *See Farmer Enterprises, Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 107 (Tex. App.-Dallas 1996, no writ). No single phrase, sentence, or section of a policy should be isolated and considered apart from the other provisions of the policy. *See Provident Life*, 128 S.W.3d at 217; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994). TBIC contends the language of the broadened coverage endorsement only broadens the liability coverage for garage operations to include property damage caused by fire to the premises, and explains that in the absence of the broadened coverage endorsement, there would have been no coverage for fire damage to the leased premises or to property within Howard's care, custody, and control because of the "care, custody or control exclusion" in section II of the TBIC policy. We agree with TBIC that the policy's plain language, when read in context, giving effect to all contractual provisions, is unambiguous and provides third-party liability coverage only. Therefore, the trial court did not err in concluding the TBIC policy was not ambiguous and did not cover Howard's equipment and personal property.

Texas law is clear that the policy's language controls and the insured has a duty to read and be familiar with the terms of his own insurance policy. *See Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex.App.-Dallas 1984, writ ref'd n.r.e.); *Manion v. Security Nat'l Ins. Co.*, No. 13–01–248–CV, 2002 WL 34230861, at \*3 (Tex.App.-Corpus Christi Aug. 15, 2002, no pet.) (not designated for publication). An insured is bound to the terms of the policy whether he reads it or not. *Manion*, 2002 WL 34230861, at \*3. Howard admitted he did not read the entire policy. He further admitted he did not attempt to verify whether the policy provided the coverage he purportedly asked Crist to obtain.

Nevertheless, Howard was bound by the terms of the TBIC policy and was charged with knowledge of its conditions and coverage. *See Heritage Manor of Blaylock Properties*, 677 S.W.2d at 691.

### 1. Claims Against TBIC

Throughout the course of this lawsuit, Howard asserted alternative claims against TBIC in the event it was determined that Howard's policy provided coverage for his equipment and personal property. Howard's alternative claims include breach of the duty of good faith and fair dealing, breach of contract, breach of the Texas Insurance Code and Deceptive Trade—Practices Consumer Protection Act with respect to unfair claims settlement practices and prompt payment of claims, and promissory and equitable estoppel. Because we conclude the TBIC insurance policy does not provide first-party coverage for Howard's first-party claims for his equipment and personal property, Howard's alternative claims against TBIC fail. The trial court did not err in granting TBIC's no-evidence motion for summary judgment as to Howard's alternative claims.

In support of his alternative claim that TBIC's insurance policy was ambiguous, Howard points to the exclusions in the quote, binder, and policy for leased automobiles. Howard contends this exclusionary language caused him to believe he would have coverage for his personal automobiles because they were not specifically excluded. He also argues the broadened coverage applies to *all* property damage caused by the fire to his automotive repair shop because the broadened coverage exclusions did not specifically exclude his personal property. The purpose of an exclusion is to remove from coverage an item that would otherwise have been included. *See Am. Mfrs. Mut. Ins.*, 124 S.W.3d at

160; *see also Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 671 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("If the insuring agreement never confers coverage for this type of liability as an original definitional matter, then there is no need to specifically exclude it."). Absence of an exclusion does not confer coverage. *See Am. Mfrs. Mut. Ins.*, 124 S.W.3d at 160. Howard's personal equipment and property were not specifically excluded in the quote, binder and policy because they would not otherwise be included in the policy's garage liability coverage. As we noted earlier, an insurance policy is not ambiguous merely because the parties interpret it differently. *See Fiess*, 202 S.W.3d at 746. Ambiguity must be evident from the policy itself. *Id.* Notwithstanding Howard's interpretation of the exclusion provisions in the policy, we conclude the TBIC's insurance policy, including its exclusions, was not ambiguous.

## 2. Claims Against MHI

Howard sued MHI for false advertising, misrepresentation, negligent misrepresentation, breach of fiduciary duty, fraud and fraudulent inducement, and negligence, all generally based on alleged insurance code and DTPA violations for issuing a misleading quote and binder. Howard claims that MHI's quote and binder violated the Texas Insurance Code by: (i) leaving out a material fact—that the fire insurance coverage provided by the policy was liability coverage only and did not include his personal property, and (ii) by making a statement in a way that would lead a reasonable person to a false conclusion about a material fact—that his property was covered for fire. *See* TEX. INS.CODE ANN. § 541.061(2), (3) (West 2009). In addition, Howard claims that because the exclusions listed on the quote and binder did not expressly exclude his equipment and personal property, he believed he had coverage for such property.

In its amended and supplemental motions for summary judgment, MHI argued Howard failed to understand the difference between first-party and third-party insurance. According to MHI, the quote and the binder indicated liability coverage only, Howard had a duty to read his policy, and if Howard had any questions concerning the coverages contained within the policy, he could have addressed them to his agent, Crist. MHI further asserted that notwithstanding Howard's attempts to create a claim against MHI based on the quote and binder, the summary judgment evidence clearly established that all of Howard's allegations against MHI were based on comments or representations he contends Crist made about the amount, types, and extent of coverages under the TBIC policy.

▮ As noted above, the quote and binder summarize limits of coverage, deductibles, exclusions, premiums, and fees proposed with respect a garage liability policy. The coverage includes broadened coverage (fire legal). However, there is no language in the quote or binder to suggest they include coverage for any first-party claims for the insured's own property. It is a violation of section 541.061 of the insurance code to misrepresent an insurance policy by "failing to state a material fact necessary to make other statements made not misleading." TEX. INS.CODE ANN. § 541.061(2). However, based on our reading of the quote and binder, we cannot agree with Howard that the documents fail to state a material fact. Nor are we persuaded by Howard's argument that the quote and binder summarized the coverage in such a way that would lead a reasonable person to a false conclusion about a material fact. The quote and binder identify the coverage to be provided as garage liability coverage. There is nothing in either document to indicate that broadened coverage

(fire legal) was first-party coverage for Howard's equipment and personal property. Howard's arguments regarding exclusions to coverage set forth in the quote and binder are addressed above in our analysis of the exclusionary language in the policy.

We conclude that Howard failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on his claim that the MHI quote and binder were misleading.

## B. Relationship between Crist, MHI, and TBIC

Howard contends that Crist is the agent of MHI and TBIC. On appeal, Howard argues the evidence raised a fact issue as to whether MHI was vicariously liable for the negligent acts of Crist in filling out the application for insurance. As to TBIC, Howard argues the evidence raised a fact issue as to whether TBIC's agents MHI and Crist were negligent and whether TBIC's agent MHI caused misleading coverage to be issued.

According to the record, Crist, d/b/a A–Lo Insurance Agency, was an independent insurance agent who "wrote" for several different insurance companies. Crist had a relationship with Howard, having previously sold him insurance for several rental properties. MHI, a licensed surplus lines agent, signed a brokerage agreement with Crist, authorizing Crist to submit insurance applications to MHI on behalf of his clients. The agreement provided "[t]he BROKER [Crist], in placing business under this Agreement, recognizes that he is doing so only on a 'submit basis' and that he is the agent or representative of the insured only and not the agent or representative of the AGENT [MHI]." The record confirms that Crist complied with this agreement and never represented to Howard that he was an agent of MHI. The record does not reflect an agency agreement between TBIC and Crist, and no other document in the record designates Crist as an agent of TBIC.

According to the record, Howard spoke only with Crist during the insurance application process. Crist obtained the quote from MHI and gave it to Howard. Crist filled out the insurance application and submitted it to MHI. MHI provided Crist with the binder, which Crist then gave to Howard. Howard did not receive any documentation directly from MHI or TBIC until after Crist had submitted Howard's application for insurance. Howard paid his initial insurance premium payment to Crist. Howard did not have any direct communications with TBIC prior to the date of the fire at Howard's auto repair business.

Texas law does not presume agency. *See IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex.2007). The party alleging agency has the burden to prove its existence. *Id.* Absent actual or apparent authority, an agent cannot bind a principal. *Tex. Cityview Care Ctr., L.P. v. Fryer,* 227 S.W.3d 345, 352 (Tex.App.-Fort Worth 2007, pet. dism'd). Actual authority is created through conduct of the principal communicated to the agent. *Id.* To confer actual authority, the principal must: (1) intentionally confer authority to the agent, (2) intentionally allow the agent to believe he possesses the authority, or (3) carelessly allow the agent to believe he possesses the authority. *See id.; see also 2616 South Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority. *See Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex.2007); *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 672 (Tex.1998).

Apparent authority is determined by looking to the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person to believe that the agent had the authority to act on behalf of the principal. *See Tex. Cityview Care Ctr.*, 227 S.W.3d at 353. When making the determination, only the conduct of the principal is relevant. *See Gaines*, 235 S.W.3d at 182. The standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Id.*

### 1. Claims Against TBIC

Howard's claims against TBIC for false advertising, misrepresentation, negligent misrepresentation, breach of fiduciary duty, fraud and fraudulent inducement, and negligence, are based on alleged misrepresentations made by Crist regarding the coverage provided by the TBIC policy and alleged misconduct by Crist in filling out Howard's application for insurance. TBIC asserts Howard has no evidence of an agency relationship existing between TBIC and Crist that would provide Crist with authority to bind TBIC for any alleged misrepresentations or misconduct by Crist. TBIC contends such a binding misrepresentation is an essential element of Howard's claims for negligent misrepresentation, insurance code and DTPA violations, breach of fiduciary duty, fraud, and estoppel. TBIC further asserts that the negligence claim alleged in Howard's third amended petition merely restated Howard's claims that the quote, binder and policy are misleading and that TBIC is liable for Crist's alleged misrepresentations.

TBIC asserts it can only be held responsible for the alleged misrepresentations and misconduct of Crist if Crist was TBIC's agent. A corporation being a legal fiction, can act only through its agents. *Farmer Enterprises*, 940 S.W.2d at 111.

Generally, an insurance company is liable for any act of an agent that is made within the actual or apparent scope of the agent's authority. *See Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98–99 (Tex.1994); *see also Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 377 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). This rule is based on notions of fairness: "since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Celtic Life Ins.*, 885 S.W.2d at 99 (citations omitted). In determining a principal's vicarious liability, the test is whether the agent was acting within the scope of the agency relationship at the time of committing the act, not whether the principal authorized the specific act. *Id.; see also Farmer Enterprises*, 940 S.W.2d at 111. To determine whether Crist's actions could bind TBIC, we must determine whether Crist was TBIC's agent and if so, whether Crist's misconduct was committed in the scope of his actual or apparent authority as TBIC's agent.

Howard argues Crist was TBIC's soliciting agent as a matter of law. In support, Howard refers to section 4001.052 of the insurance code which states: "[a] person who solicits an application for life, accident, or health insurance or property or casualty insurance is considered the agent of the insurer issuing a policy on the application and not the agent of the insured in any controversy between the insurer and the insured." Tex. Ins.Code Ann. § 4001.052(a) (West 2009). TBIC responds that section 4001.052(a) does not apply because all alleged misconduct by Crist occurred prior to April 1, 2005, the date on which section 4001.052(a) became effective. Prior to April 1, 2005, the Texas Insurance Code defined an insurer's agent as any person who: (1) solicits insurance

on behalf of an insurance company; (2) transmits an application or policy to or from an insurance company; (3) receives or delivers a policy on behalf of an insurance company; (4) examines or inspects any risk; (5) receives, collects, or transmits an insurance premium; or (6) adjusts a loss on behalf of an insurance company. *See* Tex. Ins.Code Ann. art. 21.02 (West 2003) (repealed by Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3641, eff. April 1, 2005). The record establishes that Crist performed at least some of the acts listed in section 21.02. During the relevant time period, the insurance code provided for two categories of insurance agents: local recording agents and soliciting agents. Tex. Ins.Code Ann. art. 21.14 (repealed by Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3641, eff. April 1, 2005). Although both types of agents solicit insurance, a local recording agent's authority is much broader than the authority of a soliciting agent. *See Farmer Enterprises*, 940 S.W.2d at 111; *Brown & Brown*, 317 S.W.3d at 377. The insurance code vests local recording agents with authority to write insurance policies coextensive with that of the insurance company, thus removing all doubt over questions of the local recording agent's actual or apparent authority. *See Farmer Enterprises*, 940 S.W.2d at 111. In contrast, the authority of soliciting agents is limited to soliciting business for the insurer. *Id.; see also Brown & Brown*, 317 S.W.3d at 377. A soliciting agent has no actual authority to bind the insurer. *See Farmer Enterprises*, 940 S.W.2d at 111. Here, Howard argues Crist was TBIC's soliciting agent; TBIC contends that Crist was not its agent at all. Reviewing the evidence in the light most favorable to Howard, we conclude Crist was an independent soliciting agent representing several insurance companies, including TBIC. *See Guthrie v. Rep. Nat'l Life Ins. Co.*, 682 S.W.2d 634, 637–38 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). However, as TBIC's soliciting agent, Crist did not have actual authority to bind TBIC. *See Farmer Enterprises*, 940 S.W.2d at 111.

 The statutory authority granted an agent under article 21.02 of the insurance code does not authorize an agent to misrepresent policy coverage and bind the insurer to his misrepresentations unless the insurer approved the agent's conduct by authorizing the agent's wrongful acts or subsequently ratified the wrongful acts. *See Maccabees Mut. Life Ins. Co. v. McNiel*, 836 S.W.2d 229, 232 (Tex.App.-Dallas 1992, no writ). "Only the conduct of the principal, leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of the agent." *Id.*, quoting *Southwest Title Ins. Co. v. Northland Bldg. Co.*, 552 S.W.2d 425, 428 (Tex.1977). When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent has actual authority. *Id.* We look to the acts of TBIC to see if TBIC's conduct would lead a reasonably prudent person to believe that Crist had apparent authority to bind TBIC. *See Guthrie*, 682 S.W.2d at 637.

 The evidence does not show that TBIC authorized Crist to solicit business on its behalf. According to the evidence, TBIC is a surplus lines carrier, doing business through surplus lines agents such as MHI. Crist did not deal directly with TBIC; he had to go through MHI. MHI had authority to bind coverage, evaluate risk, and set premiums. Crist did not. According to his agreement with MHI, Crist was authorized to submit business to MHI with the understanding that Crist was the agent for the insured only. Crist had no authority to issue a policy. He

merely delivered the quote and binder he received from MHI, and collected the initial premium. TBIC's summary judgment evidence included the affidavit of Frank Dent, TBIC's Claims Vice President, who stated that TBIC did not have any direct contact with Crist or confer any authority on Crist related to the issuance of the TBIC policy to Howard. He also stated that TBIC did not have an agency agreement with Crist and did not designate Crist as a TBIC agent. He further stated that Crist did not have, and had never had, binding authority for TBIC.

The evidence does not show that when Crist made the alleged misrepresentations to Howard, TBIC knowingly allowed Crist to hold himself out as having authority to act as its agent, or that TBIC showed a lack of ordinary care such that it clothed Crist with indicia of authority to act as its agent. We conclude that Crist, as TBIC's agent under article 21.02, did not have apparent authority to act on TBIC's behalf. *See Lexington Ins. Co. v. Buckingham Gate, Ltd., Inc.,* 993 S.W.2d 185, 200 (Tex.App.-Corpus Christi 1999, pet. denied). We further conclude that TBIC was not responsible for any alleged misrepresentations made by Crist. *Id.*

Howard also contends his summary judgment evidence raised a fact issue as to whether TBIC's agents, MHI and Crist, were negligent, and whether TBIC's agent MHI caused misleading coverage to be issued. Due to our disposition of the above issues, we need not address this issue. Tex.R.App. P. 47.1.

## 2. Claims Against MHI

Howard alleges MHI violated the insurance code by misrepresenting the coverage provided by the TBIC policy. Howard also contends MHI breached a fiduciary duty owed to him. Further, Howard claims MHI was negligent because it (i) issued a misleading quote and binder, (ii) failed to oversee the insurance application process, and (iii) failed to verify that Howard had signed the application.

Howard argues MHI made direct representations and misrepresentations to him concerning the insurance coverage for his business. The parties agree that MHI provided the quote and binder. However, the record does not contain any other evidence that MHI made direct representations or misrepresentations to Howard about insurance coverage for his business. According to the record, the only person who made representations to Howard about coverages under the TBIC policy was Crist.

Howard also argues MHI is liable for the alleged misrepresentations of Crist because Crist was MHI's agent, based on common law agency principles and the Restatement 3d of the Law of Agency. Howard asserts the agency relationship between MHI and Crist may be implied from the conduct of the parties under the circumstances. In response, MHI suggests that the conduct of the parties clearly demonstrates that Crist did not have actual or apparent authority to act as an agent for MHI. According to the record, Howard testified that (i) Crist never told him he worked for MHI, (ii) Howard never spoke to anyone other than Crist about obtaining the insurance, and (iii) Howard had never heard of MHI until after he had submitted an application for insurance coverage. Howard always thought he was dealing only with Crist and A–Lo Insurance Agency. Howard did not receive any documentation directly from MHI until after Crist had submitted the application for insurance on behalf of Howard. Howard had no recollection of drafting checks payable to MHI for the subject insurance. Howard admitted that the only person who made representations to him about the

insurance coverages under the policy was Crist.

 The brokerage agreement between MHI and Crist specifically provided that Crist was authorized to place business under the agreement on a 'submit basis' and that Crist was the agent of the insured only, and not the agent or representative of MHI. Based on the agreement between MHI and Crist, we conclude MHI did not provide Crist with actual authority to act as its agent. *See Gaines,* 235 S.W.3d at 182; *IRA Res.,* 221 S.W.3d at 597. After examining MHI's conduct, we further conclude MHI did nothing to cause Howard to believe that Crist had apparent authority to act as an agent on behalf of MHI. *See Texas Cityview Care Ctr.,* 227 S.W.3d at 353. We conclude Crist did not have actual or apparent authority to act as an agent for MHI. Because Howard's summary judgment evidence failed to raise a genuine issue of material fact that Crist was MHI's agent, we conclude the trial court did not err in granting summary judgment in favor of MHI on this claim.

Howard claims that because Crist was MHI's agent, MHI had a fiduciary duty to issue a quote and binder that were not misleading. His argument in support of this claim restates his argument that the quote and binder violate the insurance code by leaving out a material fact so that other statements are rendered misleading. Based on our previous dispositions, we need not address this issue. TEX.R.APP. P. 47.1.

With respect to Howard's claims that MHI was negligent because it failed to oversee the insurance application process and failed to verify that Howard had signed the application, Howard failed to provide support for his argument that MHI had a duty to provide such oversight. Because we have previously determined that Crist was not MHI's agent, we conclude that MHI is not vicariously liable for the alleged negligent acts of Crist in completing Howard's application for insurance.

 MHI contends it had no duty to advise Howard whether a specific coverage was provided under the TBIC policy. MHI argues that Howard's claims, based on his mistaken belief about the scope of coverage, fail under negligence principles and under the insurance code absent some specific misrepresentation by the agent about the insurance. *See Moore v. Whitney–Vaky Ins. Agency,* 966 S.W.2d 690, 692 (Tex.App.-San Antonio 1998, no pet.). A claim for misrepresentation cannot stand when the party asserting the claim is legally charged with knowledge of the true facts. *Id.* "In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA." *Sledge v. Mullin,* 927 S.W.2d 89, 94 (Tex.App.-Fort Worth 1996, no writ). "For the same reason, a claim based solely on mistaken belief would fail under the Insurance Code." *Moore,* 966 S.W.2d at 692–93. The trial court did not err in granting summary judgment in favor of MHI with respect to Howard's claims that MHI breached its fiduciary duty to Howard.

## C. TBIC's License To Sell Insurance

In his third amended petition, Howard claimed that TBIC violated section § 981.051 of the insurance code by issuing a policy of insurance to Howard when it was not authorized to do so. *See* TEX. INS.CODE ANN. § 981.051 (West 2009). Chapter 981 of the Texas Insurance Code governs surplus lines insurance and defines an "eligible surplus lines insurer" as "an insurer that is not an authorized insurer, but that is eligible under Subchapter B, in which surplus lines insurance is placed

or may be placed under this chapter." TEX. INS.CODE ANN. § 981.002(1).

Howard alleged that TBIC was not licensed to sell insurance in any state and therefore, the TBIC policy was issued in violation of the insurance code. Howard also argued TBIC was not authorized to issue surplus lines insurance in the state of Texas because TBIC was not authorized to engage in the business of insurance by its domiciliary state of North Carolina. See TEX. INS.CODE § 981.051(a) ("[b]efore an insurer may issue surplus lines insurance, the insurer must hold an authorization to engage in the business of insurance from its domiciliary state or country"). TBIC filed its supplemental motion for summary judgment to address Howard's claims, asserting the undisputed evidence established that TBIC was an eligible surplus lines insurer and met all requirements of Section 981.051 of the Texas Insurance Code. TBIC's summary judgment evidence included the affidavit of Arleen Simons, Senior Paralegal–Regulatory Compliance for TBIC, stating that TBIC had been recognized by the Texas Department of Insurance as an eligible surplus lines insurer since 1988. TBIC's evidence also included documentation from the Surplus Lines Stamping Office of Texas demonstrating that TBIC was an eligible surplus lines insurer as of January 1, 1988.

■ Howard objected to Simons affidavit, claiming it directly contradicted deposition testimony of Claude Fulbright, TBIC's corporate representative, who testified that TBIC was not licensed to sell insurance in any state. In reply, TBIC explained the difference between a "licensed" insurer and an "eligible" surplus lines insurer. An eligible surplus lines insurer is not authorized to sell insurance in the state of Texas, but is eligible to "place" insurance through a licensed surplus lines agent. See TEX. INS.CODE §§ 981.002, 981.004(a). TBIC's summary judgment evidence also included the affidavit of Gilbert Hine, who stated that MHI was a licensed surplus lines agency in the State of Texas. Hine's affidavit explained that MHI paid the required premium tax to the Texas Department of Insurance for TBIC policy number 211B000392 issued to Howard.

Howard's counsel asked TBIC's corporate representative Fulbright whether TBIC was licensed *to sell* insurance in any state and Fulbright answered "no." However, our review of the record indicates that Howard's counsel also asked Fulbright if TBIC was a surplus lines carrier and Fulbright answered "yes." TBIC contends Fulbright's testimony did not contradict TBIC's summary judgment evidence and we agree.

Howard did not produce summary judgment evidence to raise a fact issue as to TBIC's eligibility to place surplus lines insurance through a licensed surplus lines agent in the State of Texas. Therefore, because the summary judgment evidence conclusively established TBIC was an eligible surplus lines insurer in the State of Texas, we conclude the trial court did not err in granting TBIC's motion for summary judgment with respect to Howard's claim that the TBIC policy was issued in violation of § 981.051 of the insurance code.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgments granting the no-evidence and traditional amended and supplemental motions for summary judgments filed by TBIC and MHI.