Sandra Gervais LAINE, Appellant,

v.

FARMERS INSURANCE EXCHANGE, Appellee.

No. 01–08–01010–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 4, 2010.

Rehearing En Banc Overruled June 21, 2010.

26. *See Jasper*, 61 S.W.3d, at 422; *Camacho*, 864 S.W.2d, at 529.

27. *See* TEX.CODE CRIM. PROC. art. 35.17(2).

Phillip A. Pfeifer, Phillip A. Pfeifer, P.C., Houston, TX, for Appellant.

Kenneth R. Chambers, Chambers, Templeton, Cashiola & Thomas, LLP, Levon G. Hovnatanian, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices BLAND, MASSENGALE, and WILSON.[1]

## OPINION

JANE BLAND, Justice.

In this case, we determine whether the public policy against an insurance recovery for punitive damages assessed against an uninsured motorist applies to an umbrella policy, which defines its scope of coverage to be the same as the underlying uninsured motorist coverage. We conclude that it does.

Sandra Gervais Laine was driving her mother home one evening when an uninsured drunk driver struck Laine's car. The accident resulted in her mother's death, and Laine made a claim under her Farmers Insurance Exchange (Farmers) policies. Farmers paid the policy limit under the uninsured and underinsured motorist (UM) provision of Laine's auto policy, but when Farmers did not respond to Laine's request for payment under the umbrella policy augmenting her coverage, Laine sued Farmers for breach of the policy and its statutory obligation to provide prompt payment, as well as the drunk driver responsible for her mother's wrongful death.

The jury returned findings of actual and exemplary damages against the drunk driver on the wrongful death claim and found that Farmers failed to comply with its prompt payment obligation. But because the payment Farmers already had made to Laine under the UM policy exceeded the amount the jury found as actual damages, the trial court granted Farmers' motion for judgment notwithstanding the verdict (jnov), ruling that neither the UM provision, nor the overlying umbrella policy, covers the award of exemplary damages.

Laine appeals the jnov, contending that the trial court erred in declining to render judgment on the verdict because (1) Farmers' judicial admission that the umbrella policy provided coverage estops it from claiming that public policy precludes coverage of exemplary damages assessed against an uninsured tortfeasor, (2) the result unconstitutionally impairs her existing rights under the policy and violates her right to equal protection of the law, and (3) Farmers is waived or estopped from contesting coverage because it paid benefits under the auto policy and its administrative denial of umbrella coverage rests on a different, erroneous, ground. Laine also complains of the absence of an attorney's fees award. Following established precedent holding that UM coverage does not include coverage for exemplary damages assessed against an uninsured tortfeasor, we conclude that the trial court properly granted judgment to Farmers. We therefore affirm.

## BACKGROUND

Following the accident that killed her mother, Laine made a claim to Farmers for UM benefits. Her automobile policy

---

1. The Honorable Randy W. Wilson, judge of the 157th District Court of Harris County, Texas, participating by assignment. *See* Tex Gov't Code Ann. § 74.003(h) (Vernon 2005).

had coverage limits of $250,000, and the accompanying umbrella policy added coverage up to $1,000,000. Farmers paid Laine the policy limits on the underlying policy, but did not respond to her request for additional payment under the umbrella policy.

When she did not receive additional payment, Laine sued Farmers, claiming that Farmers breached the umbrella policy and violated the Texas Prompt Payment Act. TEX. INS.CODE ANN. § 542.056 (Vernon 2009). The trial court tried the case in three phases. The first phase addressed Laine's actual damages in her wrongful death claim. The jury found actual damages of $175,000.00 for Laine's mother's wrongful death.

In the second phase, the trial court directed a verdict finding the drunk driver guilty of intoxication manslaughter and asked the jury to find the amount of exemplary damages that should be assessed against the drunk driver. In response to this question, the jury assessed $1,500,000.00 against the drunk driver.

The third phase involved Laine's claims against Farmers. The jury found that Farmers failed to comply with the requirements of the Prompt Payment Act, but declined to award her attorney's fees.

Farmers moved for jnov, contending that it had not violated the Prompt Payment Act because the UM coverage under Laine's policy does not include coverage for punitive damages. The trial court agreed and, finding that Farmers' $250,000.00 payment under Laine's auto policy offset the jury's $175,000.00 actual damages finding on her wrongful death claim, signed a take-nothing judgment.

## DISCUSSION

### Standard of review

■ A trial court may disregard a jury's verdict and render a jnov if the evidence is legally insufficient to support the jury's findings or if a directed verdict would have been proper because a legal principle precludes recovery. TEX.R. CIV. P. 301; *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex.1998); *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.-Houston [1st Dist.] 1992, writ denied). To determine whether the trial court erred in granting a jnov, we view the evidence in the light most favorable to the verdict. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If more than a scintilla of competent evidence supports the jury's findings, we must reverse the jnov. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996); *Old Republic Ins. Co. v. EX–IM Servs. Corp.*, 920 S.W.2d 393, 395 (Tex.App.-Houston [1st Dist.] 1996, no writ). When the evidence supporting the finding, as a whole, rises to a level that would lead reasonable and fair-minded people to differ in their conclusions, the evidence comprises more than a scintilla. *Williams*, 137 S.W.3d at 124; *see Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

### Insurance policy interpretation

■ The gist of Laine's contentions on appeal is that the umbrella policy covers the jury's exemplary damages award on her wrongful death claim, and the trial court erred in ruling to the contrary. As with other contracts, an insurance policy's terms must be given effect if we can discern the parties' intent from their plain language. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex.2004). If the policy language has only one reasonable interpretation, then it

is not ambiguous, and we construe it as a matter of law. *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex.2006); *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). On the other hand, if the language is susceptible of two or more reasonable interpretations, then it is ambiguous, and we resolve the uncertainty by adopting the reasonable interpretation that favors the insured. *Fiess,* 202 S.W.3d at 746 (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991)).

■ A conclusion that the policy language provides coverage does not end our inquiry. *See Fairfield Ins. Co. v. Stephens Martin Paving, L.P.,* 246 S.W.3d 653, 655 (Tex.2008) (applying two-step inquiry into whether exemplary damages for gross negligence are insurable). In that event, we must "determine whether the public policy of Texas allows or prohibits coverage in the circumstances of the underlying suit." *Id.* We look first to the statutes to determine whether the Legislature has made an explicit policy decision. *Id.* If we find no explicit pronouncement, "we then consider the general public policies of Texas." *Id.*

*Insurance policy language*

Laine's umbrella policy defines "damages" as "the total of damages that the insured must pay (legally or by agreement with our written consent) because of bodily injury, personal injury or property damage caused by an occurrence covered by this policy...." The umbrella policy contains no express general exclusion for general damages within the description of damages that an insured must pay.

With respect to UM coverage, however, the umbrella policy declares that

[f]or the additional premium paid, it is agreed that this policy will provide Uninsured and/or Underinsured Motor-ist Coverage(s) to you or any other insured under this policy, to the extent that either or both coverages are a part of the underlying insurance, except for our limit of liability.

Because the umbrella policy directs us to the underlying auto insurance to determine the scope of the UM coverage, we next turn to that provision. The UM provision states:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

The UM provision defines "covered person" as

1. You or any family member;
2. Any other person occupying your covered auto;
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

The auto policy, unlike the umbrella policy, does not define "damages." The UM coverage specifies that it will pay the amount to which a covered person is legally entitled because of "bodily injury ... or property damage," and is silent on the issue of exemplary damages. The UM provision's "Limit of Liability" section explains that "[i]n order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage." Our court has held that this language suggests that

the UM provision is not intended to cover exemplary damages because such amounts are in "excess of actual damages sustained" and not losses "because of" bodily injury or property damage, but did so only after looking to the statutory intent underlying UM coverage. *State Farm Mut. Auto. Ins. Co. v. Shaffer,* 888 S.W.2d 146, 148–49 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

■ Thus, neither the umbrella policy nor the underlying auto policy expressly permits recovery of exemplary damages for Laine's wrongful death claim against the drunk driver under the UM provision—nor does either policy expressly prohibit it. Laine contends that Farmers judicially admitted that the policy provides coverage for exemplary damages because the umbrella policy contained no exclusion for "damages which are punitive or exemplary." Under the umbrella policy's definition, "damages," and thus, the corresponding exclusions and endorsements, applies to amounts that an *insured* must pay, not to amounts owed to a covered person by an operator of an *uninsured* or underinsured motor vehicle. These latter amounts are instead defined within the insured's auto policy. As the trial court determined, Farmers' acknowledgement that the umbrella policy covered punitive or exemplary damages when the accident occurred does not support a corollary conclusion that the umbrella policy's coverage extends to exemplary damages assessed against the third party uninsured or underinsured drunk driver; rather, the UM policy refers the reader to the underlying UM coverage to answer that question.

As our court observed in *Shaffer,* however, we need not definitively answer the question of whether Laine's umbrella policy, together with the UM policy language, covers exemplary damages assessed against a third-party tortfeasor—even if it

does, Texas public policy nonetheless prohibits it. *See id.*

*Public policy considerations*

■ As the Texas Supreme Court has observed, "Texas appellate courts have uniformly rejected as against public policy coverage under uninsured or underinsured motorist policies when the insured seeks to recover from his own insurer exemplary damages assessed against a third-party tortfeasor." *Fairfield,* 246 S.W.3d at 668; *see Milligan v. State Farm Mut. Auto. Ins. Co.,* 940 S.W.2d 228, 232 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *Shaffer,* 888 S.W.2d at 149; *Vanderlinden v. United Servs. Auto. Ass'n Prop. & Cas. Ins. Co.,* 885 S.W.2d 239, 242 (Tex.App.-Texarkana 1994, writ denied).

We squarely addressed this issue in *Shaffer,* holding that "both public policy and the language contained in the Insurance Code and the Motor Vehicle Safety-Responsibility Act limit recovery under an uninsured-underinsured motorist policy to compensatory damages." 888 S.W.2d at 149–50 (citing TEX. CIV. STAT. ANN. art. 6701h, § 1A(a)) (current version codified at TEX. INS.CODE ANN. § 1952.101 (Vernon 2009)), and Act of Oct. 1, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 TEX. GEN. LAWS 448, 449 (current version codified at TEX. TRANSP. CODE ANN. §§ 601.001–601.054 (Vernon 1999 & Supp.2009)). We observed that "[t]his policy does not support rendering damages against State Farm since neither deterrence of wrongful conduct nor punishment ... of the wrongdoer[ ] is achieved by imposing exemplary damages upon Shaffer's insurance carrier for [the] wrongful act." *Id., quoted in Fairfield,* 246 S.W.3d at 668. More recently, the Supreme Court has pointed to Chapter 41 of the Civil Practice and Remedies Code as further indication "that the punishment imposed through exemplary damages is to be directed at the wrong-

doer." *Fairfield*, 246 S.W.3d at 667. Our own precedent, cited with approval by the Texas Supreme Court in *Fairfield*, and the more recent authority, lead us to decline Laine's invitation to follow older Texas decisions to the contrary, which have been disapproved by the Supreme Court in the intervening years. *See Fairfield*, 246 S.W.3d at 668 & n. 22 (citing with approval *Milligan, Shaffer, Vanderlinden*, and *Government Employees Ins. Co. v. Lichte*, 792 S.W.2d 546, 549 (Tex.App.-El Paso 1990), *writ denied per curiam*, 825 S.W.2d 431 (Tex.1991)); *see also id.* at 683 (Hecht, J., concurring) (identifying *Manriquez v. Mid–Century Ins. Co.*, 779 S.W.2d 482 (Tex.App.-El Paso 1989, writ denied), a case relied on by Laine, as one of only two courts that "have concluded that punitive damages are damages for bodily injury covered by automobile policies," a position that "has been uniformly rejected in the context of uninsured and underinsured motorist coverage"); *Home Indem. Co. v. Tyler*, 522 S.W.2d 594, 597 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.) (holding that language requiring insurer to "pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile" includes recovery of exemplary damages under uninsured motorist provision of policy), *overruled by Milligan*, 940 S.W.2d 228 (citing *Shaffer* with approval).

Laine criticizes *Fairfield*, but, as a lower appellate court, we must obey the pronouncements of the Texas Supreme Court. *See In re K.M.S.*, 91 S.W.3d 331, 331 (Tex. 2002) (per curiam). The trial court thus correctly determined that the UM coverage available under Laine's umbrella policy does not extend to exemplary damages against the tortfeasor as a matter of law.[2]

### Estoppel and constitutional claims

Because Laine's UM provisions do not provide coverage of exemplary damages, her remaining waiver and estoppel arguments are unavailing. The fact that Farmers may have denied coverage for one reason does not mean that coverage is made available when another reason for denial would suffice. "The doctrine of estoppel cannot be used to create insurance when none exists by the terms of the policy." *Utica Nat'l Ins. Co.*, 141 S.W.3d at 203 (quoting *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex. 1988)).

Finally, Laine contends that her inability to recover exemplary damages under the UM coverage violates her right to equal protection under the Texas Constitution because other similarly situated claimants can collect exemplary damages under an insured tortfeasor's policy. The Texas Supreme Court, however, has articulated the rationale for that result:

In the uninsured and underinsured motorist context, it may be appropriate for policyholders to share in the burden of injuries caused by underinsured motorists, but not their punishment. In other words, the purpose of exemplary damages may not be achieved by penalizing those who obtain the insurance required by law for the wrongful acts of those who do not.

*Fairfield*, 246 S.W.3d at 669–70. By requiring UM coverage, the Texas Legislature ensured that persons injured by uninsured motorists would be compensated for their actual injuries. *See* TEX. INS.CODE ANN. § 1952.101; *Shaffer*, 888 S.W.2d at 149. Nothing prevents Laine from executing the exemplary damages judgment directly against the tortfeasor himself.

---

**2.** Because Laine does not prevail on her Prompt Payment Act claim, she is not entitled to recover her attorney's fees. *See* TEX. INS. CODE ANN. § 542.060 (Vernon 2009).

Laine therefore has failed to show an equal protection violation.

## CONCLUSION

Following *Shaffer*, we hold that the trial court correctly granted Farmers' motion for jnov on the basis that the UM provision of Laine's umbrella policy does not cover the exemplary damages award the jury assessed against the uninsured drunk driver for the wrongful death of her mother. We therefore affirm the judgment of the trial court.