Delivered and Filed: November 15, 2017 Opinions on Denial of en banc on Reconsideration March 14, 2018
APPELLANT ATTORNEY: Kenneth R. Chambers, Kent Chambers, Attorney at Law, 3915 W. Davis, Suite 130 #287, Conroe, TX 77304.
APPELLEE ATTORNEY: Andrew E. Toscano, 846 Culebra Rd Ste 104, San Antonio, TX 78201-6244, Matthew Brian Probus, Wauson Probus, Comerica Bank Building, Sugar Land, TX 77478-3557.
Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Patricia O. Alvarez, Justice
OPINION ON MOTIONS FOR REHEARING
Opinion by: Patricia O. Alvarez, Justice
On September 13, 2017, we issued an opinion and judgment in this appeal. Thereafter, Appellant Farmers Texas County Mutual Insurance Company and Appellees Jennifer L. Zuniga and Janet S. Northrup, as trustee for the bankruptcy estate of Christopher J. Medina, filed motions for rehearing.[1] Having considered the motions, we deny both, but we withdraw our September 13, 2017 opinion and judgment and substitute this opinion and judgment in their stead to clarify the reasons for our decision.
In this automobile-pedestrian accident case, after all other issues and claims were severed, the parties narrowed their dispute in this cause to a single issue: whether the insurance policy that promises to "pay damages for bodily injury or property damage" covers punitive damages assessed against Farmers's insured. The trial court concluded it did; we disagree. We hold the policy's plain language does not cover punitive damages, and we remand the cause to the trial court.
BACKGROUND
As Jennifer Zuniga was walking on the sidewalk near O'Connor High School, the vehicle Christopher J. Medina was driving struck Zuniga from behind and injured *649 her. Zuniga sued Medina for negligence and gross negligence, and the jury found Medina negligent and grossly negligent. It awarded Zuniga $93,244.91 in actual damages, $75,000.00 in punitive damages, pre- and post-judgment interest, and costs of court; the trial court rendered judgment on the verdict.
The vehicle Medina was driving was insured by Farmers, and Medina was a "covered person" under the insurance policy. Farmers paid Zuniga all the amounts awarded in the judgment except for the punitive damages. Farmers filed a petition for declaratory relief against Medina and Zuniga in Harris County seeking a declaration that the punitive damages are not covered by the policy or, alternatively, Texas public policy prohibits coverage for the punitive damages.
Zuniga moved to transfer venue from Harris County to Bexar County, and the Harris County trial court granted Zuniga's motion and transferred the case to Bexar County. In Bexar County, Zuniga filed an original petition seeking to recover the punitive damages from Farmers. Under a turnover order, Zuniga was assigned all of Medina's rights against Farmers, and based on those assignments, she asserted additional claims against Farmers. Zuniga filed a motion to consolidate her lawsuit, which was pending in the 73rd Judicial District Court of Bexar County, with the case transferred from Harris County to the 166th Judicial District Court of Bexar County. The trial court granted the motion, and the cases were consolidated.
Farmers sought a declaration that the insurance policy does not cover punitive damages, Farmers "has no further duty to defend or indemnify Medina; that Zuniga is not entitled to recover or collect any additional monies from Farmers; and, that Farmers has no further duty with respect to the Final Judgment" in Zuniga's suit against Medina. Farmers moved for traditional summary judgment, but the trial court denied Farmers's motion. Later, Zuniga and Northrup sought a declaration that the policy covers punitive damages, and they moved for summary judgment. Farmers filed a response, incorporated its earlier summary judgment evidence by reference, requested some declaratory relief, but prayed only that Zuniga and Northrup's motion be denied. The trial court granted Zuniga and Northrup's motion "insofar that it seeks a determination that the punitive damages ... are covered under the automobile policy in question," denied all of Farmers's requested declaratory relief, and severed all other issues and claims into a separate cause. In the original cause, Farmers appeals complaining that the policy did not cover punitive damages, the motion to transfer venue should have been denied, and on rehearing, that this court should render rather than remand. We begin with the issue of venue.
VENUE
Farmers challenges the order granting Zuniga and Northrup's motion to transfer venue of Farmers's lawsuit from Harris County to Bexar County. In her motion, Zuniga[2] asserted convenience of the parties as a ground for transferring venue. "A court's ruling or decision to grant or deny a transfer [for the convenience of the parties] is not grounds for appeal or mandamus and is not reversible error." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(c) (West 2017); accord Garza v. Garcia , 137 S.W.3d 36, 39 (Tex. 2004). We overrule Farmers's second issue.
*650 COVERAGE FOR PUNITIVE DAMAGES
In its first issue, Farmers argues that its agreement under the policy to "pay damages for bodily injury" does not cover punitive damages, and even if it did, public policy bars the policy from covering punitive damages. Zuniga, on the other hand, contends that "damages for bodily injury" includes punitive damages because other courts have concluded that the average insured would interpret damages to include punitive damages. Before we address the parties' arguments, we briefly recite the standard of review and the applicable law.
A. Standard of Review
We review a summary judgment de novo. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009) (citing Provident Life & Acc. Ins. Co. v. Knott , 128 S.W.3d 211, 215 (Tex. 2003) ). To prevail on a traditional motion, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c) ; accord Nixon v. Mr. Prop. Mgmt. Co. , 690 S.W.2d 546, 548 (Tex. 1985). If there are no disputed material facts, we decide the question of law presented. See TEX. R. CIV. P. 166a(c) ; Havlen v. McDougall , 22 S.W.3d 343, 345 (Tex. 2000) ("Because the parties do not dispute the relevant facts, this is a proper case for summary judgment.").
"[B]efore a court of appeals may reverse summary judgment for one party and render judgment for the other party, both parties must ordinarily have sought final judgment relief in their cross motions for summary judgment." CU Lloyd's of Tex. v. Feldman , 977 S.W.2d 568, 569 (Tex. 1998) ; accord Bowman v. Lumberton Indep. Sch. Dist. , 801 S.W.2d 883, 889 (Tex. 1990) ("For an appellate court to reverse summary judgment for one set of parties and render judgment for the others, the filing of cross-motions for summary judgment would ordinarily require all parties to seek final judgment relief by their motions."); Morales v. Morales , 195 S.W.3d 188, 192 (Tex. App.-San Antonio 2006, pet. denied) (citing Feldman ) ("In general, this court is only entitled to render judgment in favor of the losing party in a summary judgment context if both parties move for summary judgment.").
B. Policy Construction
1. Plain Language
"We interpret insurance policies under the well-established rules of contract construction." Great Am. Ins. Co. v. Primo , 512 S.W.3d 890, 892 (Tex. 2017) ; accord Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London , 327 S.W.3d 118, 126 (Tex. 2010). Our goal in construing the contract "is to ascertain the parties' true intent as expressed by the plain language they used." See Primo , 512 S.W.3d at 893 ; accord Gilbert , 327 S.W.3d at 126. We construe the contract as a whole; we read all its terms and provisions in context and "in accordance with the plain meaning of its terms." See Primo , 512 S.W.3d at 892 ; RSUI Indem. Co. v. The Lynd Co. , 466 S.W.3d 113, 118 (Tex. 2015) ("[W]e give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage."); Gilbert , 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."). "[W]e look at the language of the policy because we presume parties intend what the words of their contract say." Gilbert , 327 S.W.3d at 126 ; accord Primo , 512 S.W.3d at 893. "[The] contract's plain language controls, not 'what one side or the other alleges *651 they intended to say but did not.' " Primo , 512 S.W.3d at 893 (quoting Gilbert , 327 S.W.3d at 127 ). Our responsibility is "to honor the parties' agreement and not remake their contract by reading additional provisions into it." See Gilbert , 327 S.W.3d at 126. For example, the "[a]bsence of an exclusion cannot confer coverage." Am. Mfrs. Mut. Ins. Co. v. Schaefer , 124 S.W.3d 154, 160 (Tex. 2003) ; accord Howard v. Burlington Ins. Co. , 347 S.W.3d 783, 793 (Tex. App.-Dallas 2011, no pet.).
2. Ambiguity
"If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." Schaefer , 124 S.W.3d at 157 ; accord Primo , 512 S.W.3d at 893. "An ambiguity does not arise merely because a party offers an alternative conflicting interpretation, but only when the contract is actually 'susceptible to two or more reasonable interpretations.' " Primo , 512 S.W.3d at 893 (quoting Schaefer , 124 S.W.3d at 157 ). "[I]f both constructions present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." RSUI , 466 S.W.3d at 118.
3. When Construction Must Favor Insured
If a policy is ambiguous, " 'we must resolve the uncertainty by adopting the construction that most favors the insured.' " Id. (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc. , 811 S.W.2d 552, 555 (Tex. 1991) ). If the construction favoring the insured is not unreasonable, we will adopt it. See Gilbert , 327 S.W.3d at 133 ; Fiess v. State Farm Lloyds , 202 S.W.3d 744, 746 (Tex. 2006). But " 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.' " Fiess , 202 S.W.3d at 753 (quoting E. Tex. Fire Ins. Co. v. Kempner , 87 Tex. 229, 27 S.W. 122, 122 (1894) ).
4. Public Policy
If a policy's plain language covers punitive damages, we must also "determine whether the public policy of Texas allows or prohibits coverage in the circumstances of the underlying suit." Fairfield Ins. Co. v. Stephens Martin Paving, LP , 246 S.W.3d 653, 655 (Tex. 2008) (setting out a two-part test); accord Laine v. Farmers Ins. Exch. , 325 S.W.3d 661, 665 (Tex. App.-Houston [1st Dist.] 2010, pet. denied). But if the plain language does not cover punitive damages, we need not reach the public policy question. See Fairfield , 246 S.W.3d at 655.
C. Farmers Insurance Policy
The policy Medina was covered under is a contract titled "Texas Personal Auto Policy." The Policy provisions most relevant to the coverage question raised by the parties are the Declarations and Part A-Liability Coverage provisions. Under Declarations, in the Definitions section, the Policy defines a number of terms, but "damages," "bodily injury," and "damages for bodily injury" are not defined. Under Part A-Liability Coverage, the Insuring Agreement defines the coverage under the Policy. The relevant excerpts follow.
Insuring Agreement
A. We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. Property damage includes loss of use of the damaged property. Damages include prejudgment interest awarded against the covered person . We will settle or defend, as we consider *652 appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
....
Limit of Liability
A. If separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage the limit of liability for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for "each accident" for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.
It is undisputed that Medina is a covered person and is legally responsible for the punitive damages. The remaining question is whether punitive damages are included in damages for bodily injury.
D. Plain Language Analysis
Under the Policy, Farmers agreed to "pay damages for bodily injury." As we stated above, the Policy does not define the phrase "damages for bodily injury." "Terms that are not defined in a policy are given their generally accepted or commonly understood meaning." Lamar Homes, Inc. v. Mid-Continent Cas. Co. , 242 S.W.3d 1, 8 (Tex. 2007) ; see also Gilbert , 327 S.W.3d at 127 (using dictionary definitions as the source for the generally accepted or commonly understood meaning of words). Thus, we apply "the plain meaning of [the policy's] terms" to construe the Policy. See Primo , 512 S.W.3d at 892 ; Gilbert , 327 S.W.3d at 126.
The plain meaning of "bodily injury" is physical damage to a human being's body. See Zurich Am. Ins. Co. v. Nokia, Inc. , 268 S.W.3d 487, 492 (Tex. 2008) (defining bodily injury in the context of a particular insurance policy as something that "unambiguously requires an injury to the physical structure of the human body" (quoting Cowan , 945 S.W.2d at 823 )); see also Injury: Bodily Injury , BLACK'S LAW DICTIONARY (10th ed. 2014) (defining bodily injury as "[p]hysical damage to a person's body").
The plain meaning of "damages" is a sum of money to compensate for an injury. See Damages , BLACK'S LAW DICTIONARY (10th ed. 2014) (defining damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"); 1 SHORTER OXFORD ENGLISH DICTIONARY 599 (6th ed. 2007) (defining damage as a "sum of money claimed or awarded in compensation for loss or injury"); see also Horizon Health Corp. v. Acadia Healthcare Co., Inc. , 520 S.W.3d 848, 873 (Tex. 2017) (distinguishing compensatory and exemplary damages by noting that "compensatory and exemplary damages serve different purposes; compensatory damages redress concrete losses caused by the defendant's wrongful conduct, while exemplary damages are aimed at deterrence and retribution").
The plain meaning of the word "for" is "in exchange as the equivalent of." See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (Philip Babcock Gove et al. eds., 1981); 1 SHORTER OXFORD ENGLISH DICTIONARY 1010 (6th ed. 2007) (defining for as "[i]ntroducing that which something is (to be) exchanged; in exchange for").
*653 Thus, the Policy's promise to pay damages for bodily injury was Farmers's commitment to pay a sum of money as compensation in exchange as the equivalent of the physical damage to the injured person's body.
E. Considering All of the Policy's Provisions Together
We consider the Policy's promise to pay damages in the context of the entire agreement, including the insuring agreement, the limit of liability section, and the declarations. See Gilbert , 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."); accord RSUI , 466 S.W.3d at 118.
The Policy's insuring agreement creates and circumscribes the scope of the coverage.[3] See Lamar Homes , 242 S.W.3d at 10 (noting the "insuring agreement grants the insured broad coverage for property damage and bodily injury liability, which is then narrowed by exclusions"); Gemini Ins. Co. v. Drilling Risk Mgmt., Inc. , 513 S.W.3d 15, 26 (Tex. App.-San Antonio 2016, pet. denied) (noting that an insurance "[p]olicy is a contract of indemnity whose scope is limited to that expressly set forth in the insurance agreement").
On the other hand, the Policy's limit of liability section sets a maximum benefit payable under the specific type of coverage provided for in the insuring agreement. See Jankowiak v. Allstate Prop. & Cas. Ins. Co. , 201 S.W.3d 200, 206 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (recognizing that the limit of liability language provided "a maximum limit of recovery for each specific coverage"); Am. States Ins. Co. of Tex. v. Arnold , 930 S.W.2d 196, 200 (Tex. App.-Dallas 1996, writ denied) (explaining that the limit of liability applied to the coverage defined in the insuring agreement).
The Policy's declarations state three separate coverage amounts: one for bodily injury for each person, one for bodily injury for each accident, and one for property damage. The Policy's Limit of Liability language sets limits for each of the three separate coverage amounts. For the two bodily injury coverages, it limits liability to "all damages for bodily injury" in the context of either each person or each accident.
By its plain language, the Insuring Agreement circumscribes the scope of the coverage, and the Limit of Liability section establishes a maximum limit of liability for each coverage type; the Limit of Liability section does not expand the scope of the coverage.[4]
*654 F. Policy is Unambiguous
The Policy's plain language agreeing to pay damages for bodily injury, when read in the context of all the Policy's terms and provisions, has only one reasonable interpretation: a promise to pay a sum of money as compensation for the bodily injuries sustained by an injured person. See RSUI , 466 S.W.3d at 118 ; Schaefer , 124 S.W.3d at 157. The Policy's plain language has "a clear and definite legal meaning." See Primo , 512 S.W.3d at 893 ; accord Schaefer , 124 S.W.3d at 157. There are not two reasonable interpretations of the policy's language that would require us to resolve the uncertainty in favor of the insured. See RSUI , 466 S.W.3d at 118. There is only one reasonable interpretation, the Policy is not ambiguous, and we must enforce it as written. See Fiess , 202 S.W.3d at 753.
G. Zuniga's Arguments for Punitive Damages Coverage
Zuniga insists that the Policy's promise to pay damages for bodily injury covers punitive damages because of the Policy's coverage language and its failure to expressly exclude coverage for punitive damages.
1. Coverage Language
Zuniga argues that the Policy uses language that other courts have held includes punitive damages. Zuniga relies primarily on Manriquez , which considered comparable language. See Manriquez v. Mid-Century Ins. Co. of Tex. , 779 S.W.2d 482, 483 (Tex. App.-El Paso 1989, writ denied), disapproved of in part on other grounds by Trinity Universal Ins. Co. v. Cowan , 945 S.W.2d 819 (Tex. 1997).
In Manriquez , the policy's insuring agreement promised to "pay all damages for bodily injury," the same language used in the Farmers policy. Id. The Manriquez court cited cases from other courts that held the policies in their cases covered punitive damages for gross negligence. Id. at 484 (citing Am. Home Assurance Co. v. Safway Steel Prods. Co. , 743 S.W.2d 693 (Tex. App.-Austin 1987, writ denied) ; Home Indem. Co. v. Tyler , 522 S.W.2d 594 (Tex. App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.), and Dairyland Cty. Mut. Ins. Co. v. Wallgren , 477 S.W.2d 341 (Tex. Civ. App.-Fort Worth 1972, writ ref'd n.r.e.) ). The Manriquez court noted the policies in the cited cases provided for the payment of "all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury," and also noted that the courts deciding those cases "emphasize the words 'all sums' as being the important inclusive considerations." Id.
Although the Manriquez court acknowledged the absence of the phrase "all sums" in the policy it construed, see ids="9937254" index="63" url="https://cite.case.law/sw2d/477/341/">id. , it effectively added the all sums language to the policy; that we cannot do. See RSUI , 466 S.W.3d at 126 ("[W]e cannot add words to the policy's language unless the context requires us to do so."). There is no "all sums which the insured shall become legally obligated to pay as damages" language in the Policy, and we will not add words to the Policy that the parties did not include. See Primo , 512 S.W.3d at 893 ("[The] contract's plain language controls, not 'what one side or the other alleges they intended to say but did not.' " (quoting Gilbert , 327 S.W.3d at 127 )); Schaefer , 124 S.W.3d at 162 ("[W]e may neither rewrite the parties' contract nor add to its language."). We reject Manriquez 's reasoning, and we do not apply it here.
2. No Exclusion for Punitive Damages
Zuniga also argues that the Policy covers punitive damages because it does not *655 expressly exclude punitive damages. But the "[a]bsence of an exclusion cannot confer coverage." Schaefer , 124 S.W.3d at 160 ; accord Howard , 347 S.W.3d at 793. Zuniga's argument is unavailing.
H. Public Policy Argument
Farmers argues that the Policy's plain language does not cover punitive damages, but in the alternative, that public policy bars punitive damages in this case. Because we have determined that the Policy does not cover punitive damages, we need not reach the public policy question. See Fairfield , 246 S.W.3d at 655.
RENDER OR REMAND
In its brief and motion for rehearing, Farmers asked this court to hold that the Policy does not cover punitive damages and render judgment in its favor because it filed a motion for summary judgment. Although we hold that the Policy does not cover punitive damages, and that decision is binding on the trial court, we may not render judgment for Farmers because the trial court was not presented with cross-motions for summary judgment. See CU Lloyd's of Tex. v. Feldman , 977 S.W.2d 568, 569 (Tex. 1998) ; Morales v. Morales , 195 S.W.3d 188, 192 (Tex. App.-San Antonio 2006, pet. denied).
Farmers filed its motion for summary judgment in October 2015, its supplemental motion for summary judgment in January 2016, and its first amended motion for summary judgment in April 2016. See, e.g., KSWO Television Co., Inc. v. KFDA Operating Co., LLC , 442 S.W.3d 695, 699 (Tex. App.-Dallas 2014, no pet.) ("[A]n amended motion for summary judgment supersedes and supplants the previous motion, which may no longer be considered."). Zuniga filed her response in May. In June, the trial court denied Farmers's motion. In August, Zuniga filed her motion for summary judgment; it asked the court to declare that the Policy covers punitive damages and prayed that the court render judgment for her.
Farmers did not file another motion for summary judgment or ask the trial court to reconsider its earlier denial of Farmers's first amended motion for summary judgment. Instead, in its response to Zuniga's motion, Farmers requested declaratory relief, incorporated by reference the summary judgment evidence from its first amended motion, repeated its arguments against the Policy covering punitive damages, and concluded by stating "Farmers prays that summary judgment be denied."
The trial court was not presented with cross-motions for summary judgment. See Feldman , 977 S.W.2d at 569 ; Morales , 195 S.W.3d at 192 ; see also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009) (rendering judgment on summary judgment motions that were considered together). It ruled on the only motion for summary judgment before it-Zuniga's-and we may not render judgment for Farmers. See Feldman , 977 S.W.2d at 569 ; Morales , 195 S.W.3d at 192. We may only remand the cause to the trial court for further proceedings. See Dacus v. Parker , 466 S.W.3d 820, 829 (Tex. 2015) (remanding the cause because only the appellee moved for summary judgment); City of Houston v. Dacus , No. 14-16-00123-CV, 2017 WL 536647, at *1 (Tex. App.-Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.) (noting that the Texas Supreme Court remanded the cause because a cross-motion for summary judgment was not filed).
CONCLUSION
Because Zuniga and Northrup cited convenience of the parties as a basis to transfer venue, we affirm the Houston trial *656 court's order transferring venue to Bexar County.
Although the Bexar County trial court concluded the automobile policy in question covered punitive damages, we disagree. Unlike other policies that contain a promise "to pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury," the Farmers policy promises only to "pay damages for bodily injury." Based on the Policy's plain language, we hold that the Policy is not ambiguous and that it does not cover punitive damages.
We reverse the Bexar County trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.
OPINION CONCURRING IN THE DENIAL OF APPELLEES' MOTION FOR EN BANC RECONSIDERATION
Concurring Opinion by: Sandee Bryan Marion, Chief Justice
I concur in the order denying appellees' motion for en banc reconsideration and write this opinion to emphasize the legal standard governing our review of the policy language in question and to note Texas Supreme Court Chief Justice Nathan Hecht's views on the El Paso court's decision in Manriquez v. Mid-Century Ins. Co. of Tex. , 779 S.W.2d 482 (Tex. App.-El Paso 1989, writ denied), disapproved of on other grounds by Trinity Universal Ins. Co. v. Cowan , 945 S.W.2d 819 (Tex. 1997).
The opinion dissenting to the denial of appellees' motion for en banc reconsideration applies the legal standard applicable when a policy is ambiguous. In applying that legal standard, the dissenting opinion strictly construes the phrase "for bodily injury" against appellant and in appellees' favor. See Nassar v. Liberty Mut. Fire Ins. Co. , 508 S.W.3d 254, 258 (Tex. 2017) (per curiam) (noting construction favoring the insured must be adopted if policy is ambiguous). In construing the phrase in this manner, however, the dissenting opinion violates a settled rule of contract interpretation by isolating the term "damages" from the remainder of the sentence describing the scope of coverage, i.e., "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The Texas Supreme Court has instructed that in construing an insurance policy, " '[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions.' " Id. (quoting Forbau v. Aetna Life Ins. Co. , 876 S.W.2d 132, 134 (Tex. 1994) ). Similarly, no single word "should be isolated from its setting and considered apart from the other provisions." Id.
With regard to the dissenting opinion's reliance on the El Paso court's holding in Manriquez , in a concurring opinion in Fairfield Ins. Co. v. Stephens Martin Paving, LP , Chief Justice Hecht questioned the El Paso court's holding, asserting:
Standard form personal automobile policies do not state specifically whether punitive damages are covered, and while two courts have concluded that punitive damages are damages for bodily injury covered by automobile policies, that position has been uniformly rejected in the context of uninsured and underinsured motorist coverage and is therefore dubious at best.
246 S.W.3d 653, 683 (Tex. 2008) (Hecht, J., concurring) (citing Manriquez , 779 S.W.2d at 484-85, and Dairyland Cty. Mut. Ins. Co. v. Wallgren , 477 S.W.2d 341 (Tex. Civ. App.-Fort Worth 1972, writ ref'd n.r.e.), *657 as the two courts being referenced).[1] In addition, with regard to the dissenting opinion's assertion that the appellant's position limits damages "to those that redress only physical damage to a human body," the majority opinion in Fairfield Ins. Co. already provides authority for rejecting that concern. One of the cases cited by the Texas Supreme Court majority in Fairfield Ins. Co. was Ky. Cent. Ins. Co. v. Schneider , 15 S.W.3d 373 (Ky. 2000). Id. at 660 n.12. Although the policy in that case contained the broader phrase "because of bodily injury," the Kentucky Supreme Court noted the definitional difference between "damages for bodily injury" and "punitive damages" as follows:
Damages for bodily injury are regarded as compensatory damages and include the expense of cure, value of time lost, fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money. The object of compensatory damages is to make the injured party whole to the extent that it is possible to measure his injury in terms of money. The object is not to place the plaintiff in a better position than he would have been had the wrong not been done.
Punitive damages are damages, other than compensatory and nominal damages, awarded against a person to punish and to discourage him and others from similar conduct in the future. It is an allowance of smart money as the penalty for egregious conduct, or even ... as an expression of the indignation of the jury. From the injured party's perspective, punitive damages represent an additional, non-compensatory award based upon public policy concerns largely irrelevant to the issue of compensation.
Id. at 374-75 (internal quotations and citations omitted). I agree with this definitional distinction and note that this definition of "damages for bodily injury" would not "create further disputes about the scope of coverage" as the dissenting opinion suggests but would simply not extend "damages for bodily injury" coverage to punitive damages.
With the foregoing comments, I concur in the order denying appellees' motion for en banc reconsideration.
OPINION DISSENTING TO THE DENIAL OF APPELLEES' MOTION FOR EN BANC RECONSIDERATION
Dissenting Opinion by: Luz Elena D. Chapa, Justice, joined by Rebeca C. Martinez, Justice and Irene Rios, Justice
Because appellees' construction of the auto insurance policy is reasonable, we must accept it. Moreover, this case presents extraordinary circumstances justifying en banc reconsideration. I therefore respectfully dissent to the denial of appellees' motion without requesting a response.
WE MUST ADOPT APPELLEES' CONSTRUCTION BECAUSE IT IS REASONABLE
The parties in this case dispute whether an auto insurance policy covers exemplary damages. The disputed coverage provision states: "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible *658 because of an auto accident." Appellees argue the phrase "We will pay damages for bodily injury" includes coverage for exemplary damages, which are a type of damages that may be awarded in cases involving bodily injury. Appellees contend their interpretation is reasonable, and is either the only reasonable construction (i.e. the policy is unambiguous in their favor), or one of many reasonable constructions (i.e. the policy is ambiguous), in which case they would prevail.
A. If an insured's construction of an insurance policy is reasonable, we must accept it.
Generally, courts must apply general rules of contract interpretation to construe insurance policies. Nassar v. Liberty Mut. Fire Ins. Co. , 508 S.W.3d 254, 257 (Tex. 2017) (per curiam). If an insurance policy is subject to only one reasonable construction, then the policy is unambiguous and a court must adopt that construction. Id. at 258. But if an insurance policy is subject to more than one reasonable construction, then the policy is ambiguous. Id. In that event, the policy must be "construed liberally in favor of the insured and strictly against the insurer, and especially so when dealing with exceptions and words of limitation." Ramsay v. Md. Am. Gen. Ins. Co. , 533 S.W.2d 344, 349 (Tex. 1976).
When construing an insurance policy, we must therefore adopt the insured's construction when either: (1) the insured's construction is reasonable and the insurer's construction is unreasonable (in which case the policy would be unambiguous in the insured's favor); or (2) the insured's construction is reasonable and the insurer's construction is also reasonable (in which case the policy is ambiguous and must be strictly construed against the insurer). See Nassar , 508 S.W.3d at 257-58. In other words, we must adopt the insured's construction if it is reasonable, regardless of whether the insurer's construction is reasonable or unreasonable (i.e. regardless of whether the policy is ultimately ambiguous or unambiguous). See id.
The supreme court has repeatedly framed the analysis for construing insurance policies in this way. Our inquiry is "whether the [insureds]' interpretation is reasonable. If it is, then the [insureds]' interpretation must be adopted even if [the insurer]'s interpretation is also, or more, reasonable." Id. at 258 (internal citation omitted); see RSUI Indem. Co. v. The Lynd Co. , 466 S.W.3d 113, 119 (Tex. 2015) ("Our task in this case is to determine whether Lynd's construction of the RSUI policy is reasonable. If it is, we must enforce that construction, even if RSUI's construction is also reasonable."). Conversely, if the insured's construction is unreasonable, then the insurer prevails. See Nassar , 508 S.W.3d at 257 ; RSUI Indem. Co. , 466 S.W.3d at 119. This case therefore turns on whether appellees' construction is reasonable or unreasonable. See Nassar , 508 S.W.3d at 257 ; RSUI Indem. Co. , 466 S.W.3d at 119.
B. The absence of "all sums" language does not make appellees' construction unreasonable.
Appellant argues appellees' construction is unreasonable solely because the coverage provision does not say the insurer will pay "all sums" of damages, similar to language found in some other auto insurance policies. But the absence of the "all sums" language is simply not dispositive here.
First, cases in which Texas courts have construed similar policies that use the "all sums" language have not turned on that language. One court concluded exemplary damages were covered based on the weight of persuasive authority.
*659 Dairyland Cty. Mut. Ins. Co. v. Wallgren , 477 S.W.2d 341, 343 (Tex. Civ. App.-Fort Worth 1972, writ ref'd n.r.e.).[1] Another court summarily concluded the provision includes coverage for exemplary damages. Home Indem. Co. v. Tyler , 522 S.W.2d 594, 596-97 (Tex. Civ. App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.). Another court "conclude[d] that [the provision], at best, may be termed 'ambiguous,' and should therefore be interpreted in favor of coverage." Am. Home Assurance Co. v. Safway Steel Prods. Co. , 743 S.W.2d 693, 701-02 (Tex. App.-Austin 1987, writ denied).
Second, other courts have considered whether the "all sums" language is dispositive and, despite reaching opposite results, they have agreed the phrase "all sums" is not dispositive. Compare Manriquez v. Mid-Century Ins. Co. of Tex. , 779 S.W.2d 482, 484 (Tex. App.-El Paso 1989, writ denied) (holding exemplary damages covered despite absence of "all sums"), disapproved of on other grounds by Trinity Universal Ins. Co. v. Cowan , 945 S.W.2d 819 (Tex. 1997), with Schnuck Markets, Inc. v. Transam. Ins. Co. , 652 S.W.2d 206, 212 (Mo. Ct. App. 1983) (holding, even with "all sums," policy excluded punitive damages). Appellant has cited no authority that "all sums" is dispositive; there appears to be authority only to the contrary.
Third, courts throughout the country have generally construed similar policies as either unambiguously covering exemplary damages or concluded the language was ambiguous, and the insureds prevailed because their interpretation was reasonable. See Valley Forge Ins. Co. v. Jefferson , 628 F. Supp. 502, 505 (D. Del. 1986) (holding, "We will pay damages for bodily injury or property damage" is ambiguous as to whether exemplary damages are included, and citing authorities forming a three-way split). In the cases holding otherwise, either the courts "did not indulge in any particular presumption in favor of the insured," Am. Home Assurance , 743 S.W.2d at 698 (citing Schnuck Markets ), or construed similar language in uninsured motorist policies based not on the plain meaning, but on Insurance Code provisions and public policy concerns that apply only to uninsured motorist policies. See Milligan v. State Farm Mut. Auto. Ins. Co. , 940 S.W.2d 228, 230-31 (Tex. App.-Houston [14th Dist.] 1997, writ denied) (citing authorities).[2] The coverage provision here does not pertain to uninsured motorists,[3] *660 and Texas courts must indulge in a presumption that favors the insured. See Ramsay , 533 S.W.2d at 349.
Fourth, including the "all sums" language in the policy here would not change its meaning. Again, the disputed coverage provision states:
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.
The parties have argued that only two phrases in this policy contextually define what damages are covered: (1) "We will pay damages"; and (2) "for bodily injury or property damage." Including the "all sums" language in this provision would not change the meaning of either phrase or the provision as a whole.
In the phrase "We will pay damages," the damages covered are not limited or qualified whatsoever. We must therefore construe the phrase, at least initially, as including coverage for all damages, including exemplary damages. See ids="10126535" index="113" url="https://cite.case.law/sw2d/533/344/#p349">id.[4] If the policy provided, "We agree to pay all sums of damages," the phrase would still include coverage for all damages, including exemplary damages. Thus, adding "all sums" for the purpose of including coverage for exemplary damages would be unnecessary. If the absence of exclusionary language cannot impliedly create coverage, then the absence of unnecessary inclusionary language cannot impliedly limit coverage. Cf. Am. Mfrs. Mut. Ins. Co. v. Schaefer , 124 S.W.3d 154, 160 (Tex. 2003).
Appellant argues the phrase "for bodily injury or property damage" limits the damages covered to only compensatory damages. Appellant thus construes the policy as meaning, "We agree to pay damages [that are compensatory]." Under appellant's construction, if the "all sums" language were added, the policy would read, "We agree to pay all sums of damages [that are compensatory]." With or without the "all sums" language, appellant's construction would include coverage for only compensatory damages. Either way, the inclusion of the "all sums" language in the policy would not change its meaning. Thus, the absence of the "all sums" language does not make appellees' construction unreasonable.
C. Considered as a whole, the phrase "We will pay damages for bodily injury or property damage" can reasonably be construed as including coverage for exemplary damages.
The only language in the policy that might limit or qualify the damages covered is the phrase "for bodily injury or property damage." Because exemplary damages may be awarded in some cases involving bodily injury or property damage, this case turns on how "for" is defined. Some definitions of the word "for," such as "because of" or "on account of," are broad and would include exemplary damages. See, e.g. , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (Philip Babcock Gove, et al. eds., 1981) (defining "for" as "in connection with," (3d); and "because of," or "on account of," (8a) ). Consequently, "for bodily injury or property damage" could reasonably be construed as limiting damages to those arising from incidents that involve bodily injury or property damage. Shaffer , 888 S.W.2d at 148-49 ; see Dairyland , 477 S.W.2d at 343 (holding policy covering damages "because of" bodily injury included exemplary damages).[5] In other words, *661 the phrase "for bodily injury or property damage" could be reasonably construed as limiting the types of claims that trigger coverage, rather than the types of damages covered.
Other definitions of "for," such as an "exchange" or "in order to remedy," are narrower and would exclude exemplary damages. See, e.g. , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (defining "for" as "with the purpose or object of," (2e); "in order to remedy," (2h); "in exchange as the equivalent of," (5a) ). Even if it is reasonable to define "for" narrowly as limiting the types of damages covered, appellees' construction is nevertheless reasonable when considering the policy as a whole. We must therefore construe the phrase "for bodily injury," which are "words of limitation," strictly against appellant and in appellees' favor. See Ramsay , 533 S.W.2d at 349 ; accord Nassar , 508 S.W.3d at 258 ; RSUI Indem. Co. , 466 S.W.3d at 118-19.
In conclusion, appellant's sole "all sums" argument lacks merit, and a broader definition of "for" that includes coverage for exemplary damages is reasonable. We must therefore adopt appellees' construction even if appellant's construction is also reasonable or more reasonable, and regardless of whether appellant's construction is unreasonable. See Nassar , 508 S.W.3d at 258 ; RSUI Indem. Co. , 466 S.W.3d at 119.[6]
EN BANC RECONSIDERATION IS JUSTIFIED IN THIS CASE
Extraordinary circumstances justify en banc reconsideration in this case for three reasons. First, in order to satisfy Texas's requirement to establish financial responsibility for vehicles they drive, many Texas residents have purchased an auto insurance policy substantially similar to the one here. See TEX. TRANSP. CODE ANN. § 601.051 (West 2001) ; David A. Fischer & Robert H. Jerry, II, Teaching Torts Without Insurance: A Second-Best Solution , 45 ST. LOUIS U.L.J. 857, 872 (2001) (noting this policy is a "standardized form in widespread use in the United States").[7] Thus, how we construe this form language affects the contractual rights of Texas residents who have paid for insurance policies that can be reasonably construed as providing coverage for exemplary damages. It will also affect the construction of other types of insurance policies, "such as the Homeowners Policy and the Commercial *662 General Liability Policy, [that] have substantially similar language in the insuring agreement." See Fischer & Jerry, 45 ST. LOUIS L.J. at 872.
Second, rejecting appellees' construction would be not only contrary to the vast majority of decisions of courts throughout the country, but also in conflict with a decision of another Texas court of appeals. Manriquez , 779 S.W.2d at 484-85 ; accord Grace M. Giesel, The Knowledge of Insurers and the Posture of the Parties in the Determination of the Insurability of Punitive Damages , 39 U. KAN. L. REV. 355, 383-90 (1991) (citing cases from courts throughout the country). Such a conflict means insureds' contractual rights might be determined by the location in Texas where an auto accident happens to occur.
Third, construing "for bodily injury" as limiting "damages" to those that redress only physical damage to a human body creates further uncertainty about this form policy's coverage. Appellant's position requires construing "for bodily injury or property damage" as limiting damages elements, as opposed to limiting the types of claims that trigger coverage. Accepting appellant's position would raise serious questions about what damages elements other than exemplary damages would not be covered. Under Texas law, some elements of compensatory damages redress physical damage to a human being's body (such as disfigurement, physical impairment, and physical pain and suffering), but other elements, such as mental anguish, are not strictly compensatory for the bodily injury itself. See TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(12).[8] Thus, accepting appellant's construction could likely create further disputes about the scope of coverage of this form language that appears in auto, homeowners, and commercial general liability policies.
Based on the foregoing, I dissent to the denial of appellees' motion for en banc reconsideration without having requested a response.

The day before Appellees filed their motion, an amicus curiae brief was filed supporting Appellees' position.

For brevity and because their positions are aligned, from this point in the opinion until the conclusion, we use Zuniga to refer to both Zuniga and Northrup.

We recognize that conditions, exclusions, and endorsements may narrow the effective coverage. See, e.g. , Gastar Expl. Ltd. v. U.S. Specialty Ins. Co. , 412 S.W.3d 577, 583 (Tex. App.-Houston [14th Dist.] 2013, pet. denied) (noting that a condition was "effectively an exclusion because it narrows the coverage originally created by the Insuring Agreement").

Assuming arguendo that Zuniga is not raising a new argument, in her motion for rehearing Zuniga insists that the Policy covers punitive damages because the Limit of Liability section includes "liability for all damages for bodily injury sustained by any one person in any one auto accident." Zuniga emphasizes the "all damages for bodily injury" portion of the phrase as broad language that covers punitive damages. She cites a North Carolina Supreme Court case for support, but that decision was based on a policy that required the insurer to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages." See Mazza v. Med. Mut. Ins. Co. of N. Carolina , 311 N.C. 621, 319 S.E.2d 217, 219 (1984) (emphasis added). There is no "all sums" language in the Policy. Zuniga's argument that the "all damages for bodily injury" language in the Limit of Liability section has the same effect on the scope of coverage as the "all sums which the Insured shall become legally obligated to pay as damages" language in the other policies' insuring agreement sections is not persuasive.

Dairyland Cty. Mutl Ins. Co. , the second opinion Chief Justice Hecht described as dubious in its conclusion that punitive damages are damages for bodily injury, is an "all sums" policy case. The policy in that case provided for the payment of "all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury." 477 S.W.2d at 343. I disagree that this "all sums" language is "similar" to the policy language in the instant case.

The Dairyland court relied on a law journal article and a Sixth Circuit case. 477 S.W.2d at 343.

The Milligan court noted in one of those cases, "the First Court determined that the phrase 'because of bodily injury' is ambiguous because it could be interpreted to mean the insured is entitled to recover any damages that arise because of bodily injury, or it could mean the insured is only entitled to recover damages that are derived from the bodily injury." 940 S.W.2d at 231 (emphasis added) (citing State Farm Mut. Auto. Ins. Co. v. Shaffer , 888 S.W.2d 146, 148-49 (Tex. App.-Houston [1st Dist.] 1994, writ denied) ).

The majority and concurring opinions in Fairfield Insurance Co. v. Stephens Martin Paving, LP ., noted four times that Texas courts have "uniformly" rejected coverage of exemplary damages in uninsured motorist policies on public policy grounds-not solely because of the plain meaning of the insurance policy. 246 S.W.3d 653, 668 (Tex. 2008) ("Texas appellate courts have uniformly rejected as against public policy coverage under uninsured or underinsured motorist policies....") (emphasis added); id. at 683 (Hecht, J., concurring) (which the concurrence in this case cites); id. at 685 ("Texas courts have uniformly rejected such recovery as against public policy ") (emphasis added); id. at 688 ("Texas courts have uniformly held that uninsured or underinsured motorist coverage of punitive damages is against public policy .") (emphasis added); id. at 683, 685 nn.63, 67 (citing Milligan and other uninsured motorist cases). I therefore believe the concurrence in this case quotes Chief Justice Hecht's concurrence out of context.

Black's Law Dictionary defines "damages" as suggesting all damages are compensatory in nature. But under Texas law, compensatory damages and exemplary damages are both categories of "damages." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5), (8) (West Supp. 2017).

See also Valley Forge , 628 F. Supp. at 505 (citing authorities); Lafauci v. Jenkins , 844 So.2d 19, 26-28 (La. App.-1st Cir. 2003, writ denied) (noting inherent conflict between a policy stating, "We will pay damages, other than punitive or exemplary, for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident," and a policy stating, "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident.")

I disagree with the concurring opinion's statement that considering the plain meaning of individual words and phrases "violates a settled rule of contract interpretation." Every time a court consults a dictionary for a word's plain meaning, the court is, technically speaking, considering the word in isolation. See, e.g. , Farmers Tex. Cty. Mut. Ins. Co. v. Zuniga , No. 04-16-00773-CV, 548 S.W.3d 646, 652-54, 2017 WL 5471887, at *4-5 (Tex. App.-San Antonio Nov. 15, 2017, no pet. h.) (defining "bodily injury," "damages," and "for," first in isolation, and then considering the provisions together). Certainly, construing an entire contract based on only one word or phrase without reference to others would violate a settled rule of contract interpretation. But that is simply not an accurate characterization of the foregoing analysis.

This form language appears in "[m]ost standard commercial and individual liability policies." Ellen S. Pryor, The Tort Liability Regime and the Duty to Defend , 58 Md. L. Rev. 1, 21 (1999).

See also Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 763 (Tex. 2003) (explaining compensatory damages elements in personal injury cases can "compensate an injured party for lost wages, lost earning capacity, and medical expenses, "for pain, suffering, mental anguish, and disfigurement" and "for loss of enjoyment of life") (emphasis added).